**EVEREST & JENNINGS, INC., a corporation, Appellant,**

**v.**

**E & J MANUFACTURING COMPANY, a corporation, Appellee.**

**E & J MANUFACTURING COMPANY, a corporation, Appellant,**

**v.**

**EVEREST & JENNINGS, INC., a corporation, Appellee.**

**No. 15922.**

United States Court of Appeals
Ninth Circuit.

Dec. 24, 1958.

Rehearing Denied Feb. 2, 1959.

Fred H. Miller, Allan D. Mockabee, Los Angeles, Cal., for appellant.

Lyon & Lyon, Frederick W. Lyon, Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

There are cross appeals before us in this case. Everest & Jennings, Inc., a corporation—defendant below and appellant and cross-appellee here—appealed from the judgment of the court below holding that E & J Manufacturing Company, a corporation—plaintiff below and appellee and cross-appellant here—was the owner of the trade-mark "E & J"; that the trade-mark was good and valid in law; and was infringed by the use of the trade-mark "E-J". The court enjoined the defendant from further infringement, and refused to order registration of "E-J" as a trade-mark of the defendant to be applied on wheel chairs.

The district court further held that the infringement by the defendant was done without intent to infringe; that there was no contract between the parties; and that no damages should be awarded to plaintiff. From such holdings of the court below the plaintiff appealed to this Court.

We will continue to refer to E & J Manufacturing Company, a corporation, plaintiff below, as the plaintiff, and Everest & Jennings, Inc., a corporation, defendant below, as the defendant, regardless of designations on appeal.

Plaintiff E & J Manufacturing Company is a California corporation, which

was incorporated in 1945. This corporation has manufactured and sold resuscitators and other gas administering devices under the trade-mark "E & J" since its incorporation. The initials "E" and "J" of the plaintiff's trade-mark were derived from the initials of the developers of resuscitators, C. N. Erickson and Dr. Johnston. The initials, either alone or as "E & J Manufacturing Company," were used as a trade-mark by the sole proprietorship owned by Mr. Erickson from 1929. In 1945 Mr. Erickson disposed of his business, including the trade-mark, to Don Baxter, Inc., which corporation conveyed such business including the mark, to the plaintiff.

Plaintiff registered the trade-mark "E & J" in the United States Patent Office on July 27, 1948, for use on "resuscitators, oxygenators and cases especially designed and adapted to ship and carry said resuscitators and oxygenators in class 44, dental, medical and surgical appliances." [1]

Defendant Everest & Jennings, Inc. is the manufacturer of wheel chairs for invalids, with its principal place of business within approximately 15 miles of the main office of plaintiff. Its business was originally started in 1932 by Herbert A. Everest and Harry C. Jennings, as co-partners. Later the partners formed the corporation, and the assets of the partnership were transferred to the corporation. In 1943 Everest sold out his entire interest in the corporation; Jennings is still active in the corporation but only in an advisory capacity, and his son, Gerald M. Jennings, is now the president.

Shortly after defendant began marketing its chairs and, apparently without any encouragement by the company, its customers began to refer to the company's product as "E and J chairs". With the advent of World War II, the designation became even more popular, particularly among injured servicemen who were using the wheel chairs. Finally, in 1946, because of the widespread use of the term "E and J" defendant adopted the initials "E-J" as a trade-mark. At that time a rather expensive die was produced to cast the initials "E-J" on the metal foot pads of the chair, as a means of readily identifying the wheel chair as being of the defendant's manufacture and standard of quality. In addition to the initials "E-J", each foot pad also carried on the underside the full and complete name "Everest & Jennings". Whenever the initials "E-J" were used on the chairs there was also a name plate on the cross brace of the chair bearing the name of the defendant in full, the street address of the defendant, and the serial number by which the chair could be identified.

In March 1952, defendant filed an application to register the trade-mark "E-J" as applied to invalid chairs with the United States Patent Office. The application was allowed by the examiner and publication ordered and made in the Patent Office Official Gazette. Plaintiff instituted an opposition proceeding, which was sustained by the examiner of interferences. An appeal from this decision by defendant has been stayed pending the outcome of these proceedings.

Plaintiff manufactures resuscitators, gas anesthetic machines, oxygenators, and other similar products under the name "E & J" and sells these products throughout the world to hospitals, governmental agencies such as fire departments, police departments, or other organizations concerned with rescue and first aid. In addition, these products are sold to various large heavy industrial concerns where there is a need to administer first aid and artificial respiration.

Plaintiff's products are normally purchased by persons in the medical profession or upon their advice, even when the items are purchased by a fire or police department. Their products sell for prices ranging from $350 to $420, and usually only after a demonstration by a competent demonstrator. On the other hand, defendant's invalid wheel chairs are sold at a much lower average figure

1. United States Patent Office trade-mark number 439 924.

and to the general public, rental businesses, and to hospitals and other public institutions, usually without an approval by a medical doctor.

Apparently for a long period of time neither of the parties in this litigation, nor their predecessors, were aware of the other's existence. One of the plaintiff's employees, since 1928, testified that he was not aware of defendant until 1945; and another employee, from 1933 to 1953, testified he did not hear of the defendant or its predecessor until 1946. Prior to 1949, there had been some mis-addressed mail and purchase orders sent to the wrong address of plaintiff or defendant. Whenever this occurred, the mail was merely forwarded on to the proper party, as neither one was competing with the other in the sale of the same products. Finally, in October 1949, a trade publication in commending a new development by plaintiff credited the device to defendant. Shortly after this magazine was published, the president of defendant contacted plaintiff for the purpose of seeing what could be done to eliminate the confusion. Following the suggestion of the defendant's official, two meetings were held between the parties. The result was that defendant continued to use the mark "E-J" on its wheel chairs, but deleted the use of "E-J" from its advertising, promotional literature, and from its correspondence, in the hope that this would reduce or eliminate mis-addressed mail and orders. Thereafter, both parties noticed a decline in the incidence of confusion, particularly as to mis-addressed envelopes and orders. However, there continued to be some mis-addressed mail during this period.

In December, 1952, defendant resumed using the initials "E-J" but always with the reference to Everest & Jennings, Inc. in close proximity to the initials, either within the shield used as the trademark, or printed somewhere on the wheel chair itself close to the initials. From that time, there were instances of money sent to the wrong party, purchase orders sent to the wrong company, convention space wrongly allocated, magazine advertising wrongly credited, and salesmen of one company thought by customers to be salesmen of the other. This resulted in the present litigation.

Before proceeding with the discussion of the points raised on this appeal, it should be pointed out that defendant in its statement of points to be relied upon on appeal has cited some 26 specifications of error, numbered I to XXVI. In its brief are set out and argued only those errors numbered XI to XVIII. Rule 18(2) (d) of this Court, 28 U.S.C.A., requires that "in all cases" a brief shall contain "a specification of errors relied upon which shall be numbered and shall set out separately and particularly each error intended to be urged." Failure to comply with this rule relieves this Court of considering the omitted errors, even if the errors are set forth elsewhere in the record. Peck v. Shell Oil Company, 9 Cir., 1944, 142 F.2d 141. Therefore we will deal only with the specifications set forth in the brief.

Appeal of Everest & Jennings, Inc., a corporation.

The specifications of error set forth in the defendant's brief center around the claimed error that, as stated in defendant's brief, "The conclusion reached by the Trial Court disregards the principle of law that anyone is entitled to use his own name on his products or any abbreviation thereof by which he is popularly known, and as long as he does so reasonably and honestly, it is immaterial whether some portion of the trade or public are confused or mistaken as long as they are not deceived."

A subsidiary point raised by the defendant is that the trial court erred in receiving in evidence as proof of confusion resulting from defendant's use of the initials "E-J" on its products mis-addressed letters and mis-addressed purchase orders without proper authentication.

By its judgment the trial court determined that the plaintiff was the owner of a trade-mark entitled to protection; that the defendant had infringed such trade-

mark; that the defendant be enjoined from using in the manufacture, advertisements, offering for sale, or sale of wheel chairs or walkers under the trademark "E & J" or any colorable imitation thereof. The judgment further requires that defendant circularize its present customer list and advise what other name defendant intends to use in the marketing of its products, and stating that it is withdrawing from the use of the trademark "E-J". The trial court further dismissed the defendant's counter-claim in which it sought the right to use the trade-mark "E-J" as applied to invalid wheel chairs, and the right to register the same in the U. S. Patent Office as applied to said goods.

It is the position of defendant that the federal trade-mark laws do not prevent a person or corporation from honestly and fairly using his or its own name or abbreviation thereof on his or its own goods. Defendant claims that, therefore, it is entitled to use the trademark "E-J" without restraint. This contention is without merit. Whatever rights a person may have to use his own name are not relevant here. Everest & Jennings, Inc., is an arbitrary name selected as the name of a corporation and, as such corporation, is not entitled to the same equitable considerations as an individual using his own name. When the use of a corporate name, even if done honestly, will and does lead to confusion as to the source of such corporation's goods with those of a prior user whose mark has acquired a secondary meaning, there has been no hesitation by the courts in requiring the second user to take reasonable precautions to prevent the confusion.[2] And the second user can be enjoined entirely from using its infringing name, even in the absence of deliberate bad faith in the selection of the name, upon the showing of sufficient confusion.[3] Corporate initials should fare no better than corporate names under the same circumstances. The mere fact a corporation is using the name of one of its shareholders does not confer the same rights the shareholder might have to the use of his own name.[4] The fact that the defendant's corporate name includes the name Jennings, which is the name of a shareholder and an officer in the corporation, is without significance in this case.

With respect to defendant's contention that the trial court erred in receiving into evidence as proof of confusion mis-addressed letters and mis-addressed purchase orders without proper authentication, the defendant states only that such evidence is "of dubious evidentiary value in attempting to establish 'confusion or mistake or deceit of purchasers.'" In none of the authorities cited by the defendant was the mis-addressed mail actually excluded by the trial court. To admit evidence of "dubious value" is not error.

Our main problem on the defendant's appeal is the breadth of the injunction issued by the trial court. The trade-mark of plaintiff "E & J" consists of the initials of two words contained in plaintiff's corporate name. The mark may be said to be descriptive of the corporation and when it is used to identify its product the mark is descriptive of the source of such product. The trade-mark is not fanciful or technical. The trademark is entitled to protection only if it has acquired a secondary meaning and has come to indicate that the products in connection with which it is used are the products manufactured by the plain-

2. L. E. Waterman Co. v. Modern Pen Co., 1914, 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 142; Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 1908, 208 U.S. 554, 28 S.Ct. 350, 52 L.Ed. 616; Lane Bryant, Inc. v. Maternity Lane, Ltd. of California, 9 Cir., 1949, 173 F.2d 559.

3. Brooks Bros. v. Brooks Clothing of California, D.C.Cal.1945, 60 F.Supp. 442, affirmed Brooks Clothing of California v. Brooks Bros., 9 Cir., 1947, 158 F.2d 798, certiorari denied 331 U.S. 824, 67 S. Ct. 1315, 91 L.Ed. 1840.

4. National Distilling Co. v. Century Liquor & Cigar Co., 6 Cir., 1910, 183 F. 206; Ford Motor Co. v. Ford Insecticide Corp., D.C.Mich.1947, 69 F.Supp. 935.

tiff corporation.[5] The finding of the trial court that the plaintiff "and its predecessor in interest has for many years built up and enjoyed an extensive and profitable business in the manufacture and sale of resuscitators, oxygenators and cases therefor with the trade-mark 'E & J' appied thereto, and when applied to such goods the trade-mark 'E & J' has become widely known throughout the United States as designating the E & J Manufacturing Company as the manufacturer of said goods," is amply supported by the evidence, as is the finding that "the trade-mark 'E & J' is widely known and respected in the hospital supply field as designating the products of the plaintiff."

The trial court held that the protection to which the plaintiff was entitled should be by reason of the trade-mark registration under the federal trade-mark laws, and not because of unfair competition involving the mark. This protection is provided for under the Lanham Trade-Mark Act of 1946,[6] which provides at 15 U.S.C.A. § 1114 that:

> "Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source or origin of such goods or services * * * shall be liable to a civil action by the registrant * * *."

The trial court held that the use of the trade-mark "E-J" by defendant on wheel chairs has resulted in actual confusion to customers as to the origin of goods sold with the trade-mark "E-J" applied thereon. The record reveals that for the three-year period that the defendant's mark "E-J" was deleted from its advertising, letterheads and catalogs, and when the mark was used only on the wheel chairs themselves to identify them as a product of the defendant, there was no confusion, although there was some evidence of an occasional mis-directed letter. The likelihood of confusion or mistake required by 15 U.S.C.A. § 1114 must be demonstrated by more than merely an occasional mis-directed letter. The showing of a mere trace of confusion is insufficient.[7] The trial court was justified under the evidence in enjoining the defendant from the use of the mark "E-J" in its advertising, correspondence and catalogs. There is not sufficient evidence, however, to support a finding of the likelihood of confusion in the use of "E-J" on the defendant's wheel chairs as identification of the product only when such use is accompanied by the full corporate name and address immediately next to the mark.

In determining the extent of the injunction under circumstances of this case, the element of confusion is not the only matter to be considered. The right to an all-inclusive injunction barring all use of the mark is not absolute where the mark is not fanciful and strong, but as in this case is descriptive, weak, and dependent on the showing of a secondary meaning for protection.[8] The

5. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 1938, 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Grove Laboratories v. Brewer & Co., 1 Cir., 1939, 103 F.2d 175; Household Finance Corp. v. Federal Finance Corp., D.C.Ariz.1952, 105 F.Supp. 164.

6. Act of July 5, 1946, 60 Stat. 427, incorporated in 15 U.S.C.A. §§ 1051–1127.

7. Sunbeam Lighting Co. v. Sunbeam Corp., 9 Cir., 1950, 183 F.2d 969; S. C. Johnson & Son, Inc. v. Johnson, 2 Cir., 1949, 175 F.2d 176, certiorari denied 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527.

8. Stork Restaurant v. Sahati, 9 Cir., 1945, 166 F.2d 348; Sunbeam Lighting Co. v. Sunbeam Corp., 9 Cir., 1950, 183 F.2d 969; Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 1951, 191 F.2d 141; Arrow Distilleries v. Glove Brewing Co., 4 Cir., 1941, 117 F.2d 347; Philco Corp. v. F. & B. Mfg. Co., 7 Cir., 1948, 170 F.2d 958; 3 Callman, The Law of Trade-Marks (2d Ed.1950) 986–988; Handler & Pickett, Trade-Marks and Trade Names—An Analysis and Synthesis (1930), 30 Columbia Law Review 168; Restatement of Torts, Sections 715 and 716.

extent of its injunctive protection is governed by section 1116, Title 15 U.S.C.A. The first sentence of that section provides, "The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent Office." Under this section, the extent of a weak mark's protection depends upon a balancing of the equities as between the registrant and the second user. The "E & J" mark has been used only in connection with the plaintiff's resuscitators, and its similar products. Its registration in the U. S. Patent Office refers only to this use. On the other hand, the record shows that, although there was no encouragement on the part of the defendant, its wheel chairs, a product which plaintiff does not produce, over a long period of years have become known as "E and J chairs." This phrase became synonymous in the minds of defendant's customers and throughout the trade as representing Everest & Jennings' wheel chairs, and that company's standard of quality. Only after this acceptance occurred did defendant adopt the "E-J" mark. This was done apparently without any knowledge of the existence of plaintiff or its mark, let alone with any desire on the part of defendant to trade on the reputation of the plaintiff, or to pass its wheel chairs off as those of plaintiff. No conscious design to deceive the public has been shown here, and there is no evidence that the public has been deceived even innocently.

Under 15 U.S.C.A. § 1116, the court cannot disregard these equitable considerations and grant to a weak mark an absolute monopoly to which it is not entitled and prevent a use which is innocent and has not caused confusion, nor is likely to do so. In light of the extent and nature of the confusion as revealed by the record in this case, and upon a balancing of the equitable considerations which are likewise revealed by the record, we hold that the trial court exceeded the authority granted by sections 1114 and 1116, Title 15 U.S.C.A. when it absolutely enjoined all use of the mark "E-J" by defendant.

The injunction should prohibit the use by the defendant of the mark "E & J", or any colorable imitation thereof, including "E-J" by defendant in connection with its correspondence, advertising, catalogs, and any other form of sales promotion, except the use by defendant of the mark "E-J" on its invalid wheel chairs as identification of the product only, but provided, that when it is so used, the mark be accompanied by the full corporate name and address immediately next to, or incorporated in, the mark itself. In view of the above limitations on the use of the mark "E-J", we hold that the defendant, in accordance with the provisions of section 1119, Title 15 U.S.C.A., has the right to register the trade-mark in the Patent Office as applied to invalid wheel chairs, and is entitled to a decree to that effect to be certified to the Commissioner of Patents for appropriate action. We further hold that the judgment of the trial court should be modified by eliminating the requirement that the defendant immediately advise its present customers of what name it intends to use to replace "E-J".

Appeal of Plaintiff, E & J Manufacturing Company.

We turn now to the appeal of plaintiff E & J Manufacturing Company. Defendant claims that it should not be considered because plaintiff failed to comply with Rule 18,[9] of this Court,

"9. Rule 18. Briefs—1. Counsel for the appellant shall file with the clerk of this court 20 copies of a printed brief, and serve upon counsel for the appellee three copies thereof, within 30 days after the clerk has mailed to him copies of the printed record. * * * 3. Counsel for an appellee shall file with the clerk 20 copies of a printed brief, and serve upon counsel for the appellant three copies thereof, within 30 days after receipt of copies of the appellant's brief. * * *"

which requires an appellant to serve and file his opening brief within 30 days after the clerk of this court has mailed to him copies of the printed record. Since plaintiff filed and served its appellant's brief with its appellee's brief, within the time prescribed for an appellee's brief but after the time prescribed for an appellant's brief, defendant urges the appellant's cross-appeal should be considered untimely. We agree that plaintiff is not in compliance with the clear meaning of Rule 18, which makes no distinction between an appellant and a cross-appellant. Clearly, a cross-appellant is required to file his opening brief concerning those parts of the trial court's decision from which he is appealing within the same time as an appellant. Any other interpretation could lead to unnecessary delay or could penalize the other party as to the time in which he must file his reply. However, here defendant sought no extension of time in which to answer plaintiff's opening brief and does not claim it has been prejudiced in any way by the late filing. Therefore, we will consider the points raised by plaintiff in its cross-appeal.[10]

Plaintiff's first specification of error concerns the finding of the trial court that there was no contract binding defendant to cease and desist from further use of the trade-mark "E & J" or its imitations. It has been long the law that actions brought to enforce contracts of which a patent is the subject matter must, in the absence of diversity of citizenship, be brought in the state court.[11] This is the interpretation placed upon 28 U.S.C.A. § 1338 [12] and its predecessors when applied to patents. The same rule applies to the construction of this section when trade-marks are involved, since this section deals equally with patents and trade-marks. In this case, plaintiff's rights under the alleged contract could not depend upon any Act of Congress relating to trade-mark law, nor is there diversity of citizenship as to the parties. Therefore, the contract should not have been considered by the trial court, and we have no jurisdiction to consider it here.

Plaintiff also contends that the trial court erred in failing to find that defendant's use of the trade-mark "E-J" constituted unfair competition entitling it to damages. Under 15 U.S.C.A. § 1114 (1), a registrant such as plaintiff "shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such mark is intended to be used to cause confusion or mistake or to deceive purchasers." To come within the language of this section, the registrant must show not only that the infringer infringed, but that he did so with the deliberate intent to cause confusion, mistake or to deceive purchasers; in other words, to purposely palm off the infringer's goods as those of the infringed.[13] The trial court in

10. McGrath v. Nolan, 9 Cir., 1936, 83 F. 2d 746.

11. Wilson v. Sandford, 1850, 10 How. 99, 13 L.Ed. 344; Luckett v. Delpark, Inc., 1926, 270 U.S. 496, 46 S.Ct. 397, 70 L. Ed. 703; Vanderveer v. Erie Malleable Iron Co., 3 Cir., 1956, 238 F.2d 510.

12. "Sec. 1338. Patents, copyrights, trade-marks, and unfair competition

"(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases.

"(b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws. June 25, 1948, c. 646, 62 Stat. 931."

13. Straus v. Notaseme Hosiery Co., 1916, 240 U.S. 179, 36 S.Ct. 288, 60 L.Ed. 590; Champion Spark Plug Co. v. Sanders, 2 Cir., 1946, 156 F.2d 488, affirmed, 1947, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386; McCormick & Co., Inc. v. B. Manischewitz Co., 6 Cir., 1953, 206 F.2d 744. See also: Golden West Brewing Co. v. Milonas & Sons, 9 Cir., 1939, 104 F.2d 880; National Van Lines v. Dean, 9 Cir., 1956, 237 F.2d 688.

substance found that the defendant adopted its trade-mark in good faith, without knowledge of the use by plaintiff of a similar trade-mark and without any intent to infringe or deliberately palm off its goods as those of the plaintiff. Such findings of the trial court find ample support in the record.

The judgment and decree of the trial court shall be modified in the particulars expressed in this opinion and the cause is remanded to the trial court for further proceedings not inconsistent with the views herein expressed.