**B. D. COMMUNICATIONS, INC., Plaintiff,**

v.

**DIAL MEDIA, INC., et al., Defendants.**

**No. 77 Civ. 1744.**

United States District Court, S. D. New York.

April 15, 1977.

Keane & Butler, New York City, for plaintiff; Stuart L. Potter, Alison E. Clapp, New York City, of counsel.

Amster & Rothstein, New York City, for defendants; Morton Amster, Anthony Lo-Cicero, New York City, of counsel.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD WEINFELD, District Judge.

Plaintiff, a distributor of a dust mop that it alleges is advertised and sold under the name of "Nenette Magic Duster," seeks in this action to enjoin the defendants from telecasting an advertisement for their own dust mop, the "Miracle Duster."[1] The defendants include Dial Media, Inc. ("Dial Media"), the distributor of the Miracle Duster, its advertising agency and various companies and individuals affiliated with these concerns. Plaintiff charges that the defendants have adopted a name for their product strikingly similar to that applied to plaintiff's dust mop and that they are promoting the Miracle Duster in a television advertisement that is a virtual copy of plaintiff's own advertisement. These actions are alleged to constitute unfair competition under the Lanham Act[2] and under the common law because they have created

---

1. An evidentiary hearing on plaintiff's motion for a temporary restraining order and preliminary injunction revealed that each side to this controversy had offered all available evidence on the issues presented by plaintiff's complaint and applications. Accordingly, the Court, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure and with the concurrence of the parties, ordered that the trial of the action be advanced and consolidated with a hearing of the applications.

2. 15 U.S.C. § 1125.

a likelihood that consumers will confuse the two products and purchase defendants' dust mop when they intend to purchase plaintiff's.

The two dust mops involved in this action are for all practical purposes identical. Each is composed of a mophead made of white cotton strands, which is attached to a frame, which, in turn, is secured to a plastic handle approximately six inches long. The plaintiff's and the defendants' mopheads are treated with secret chemicals known as "Nenetol" and "Chemorex," respectively, which give the mops the capacity to pick up and retain dust. When the effectiveness of the chemicals wears off, the mopheads can be removed, washed, retreated with chemicals and replaced on the duster.

Plaintiff commenced negotiations in December 1976 to acquire an exclusive license from Lexington Products, Ltd. of London, England ("Lexington") to sell the Nenette duster in the United States. Lexington owns the secret formula for Nenetol and allegedly has the exclusive right to sell it and the Nenette dust mop in various parts of the world, including the United States. During the course of its negotiations with Lexington, plaintiff undertook to market test the product in selected areas. It produced a television commercial to be used in its advertising campaign, and the commercial was first telecast on January 18, 1977 in Providence, Rhode Island. Subsequently, the commercial was run in that area, in Boston, in South Bend, in Atlanta and elsewhere. On various days the commercial was shown once and sometimes twice by approximately fifty different television stations. The advertisement runs for two minutes, the last fifteen seconds of which give information as to how and where the viewer might purchase the product in his particular area. During the commercial, the mop is visually displayed on numerous occasions, and at the "tag" or the end portion of the

commercial the viewers are requested to address mail orders to "Magic Duster."

Encouraged by its early market testing, plaintiff continued its negotiations with Lexington. While plaintiff was engaged in these negotiations, the defendant Dial Media also indicated to Lexington it desired to obtain an exclusive license to market the Lexington dust mop in the United States. Lexington representatives stated that Dial Media made slanderous statements about plaintiff's financial capacity and responsibility and informed Lexington that unless Dial Media received the exclusive license it would "rip off" the Nenette duster. During its discussions with Dial Media, Lexington suggested that if Dial Media would agree to pay plaintiff for the commercial which it had developed for testing the market, Lexington would consider granting the license. Dial Media rejected this proposal, pointing out that plaintiff's failure to copyright the commercial put it in the public domain. On this occasion Dial Media also displayed to Lexington a mop using a different chemical that it intended to market through a television campaign in the event it was not awarded rights to distribute Lexington's mop. Negotiations terminated when Lexington indicated it deemed itself under obligation to plaintiff to grant it the license.

There can be no doubt that substantial portions of defendants' commercial track the language of plaintiff's commercial and to some extent duplicate the form of its visual presentation. Plaintiff's complaint, however, does not charge the defendants with copyright infringement,[3] but rather alleges that the defendants' use and the manner of use of plaintiff's commercial constituted unfair competition, the likely effect of which was to confuse viewers as to which product was being advertised. The essential inquiry is whether the defendants' com-

---

**3.** The evidence establishes that the plaintiff did telecast its commercial on numerous occasions without any copyright notice. Defendants thus contend they were free to copy the commercial because it was in the public domain. Plaintiff, however, asserts that the telecasts of its com-

mercial did not constitute publications and thus that it retained a common law copyright with respect to the advertisement. It is unnecessary to resolve this issue since plaintiff makes no claim of copyright infringement.

mercial is likely to confuse or mislead an appreciable number of ordinarily prudent prospective viewers with respect to which advertiser's product is being offered.[4]

Plaintiff, to support its claim of likely confusion, urges that the defendants have copied much of the script of plaintiff's commercial concerning the use of the product on furniture, cars, lamps and other articles. Plaintiff also relies upon several communications it received from viewers, which apparently were intended for the defendants. Further, plaintiff contends that the name "Miracle Duster" bears a remarkable similarity to the names "Magic Duster" and "Magic Dusting Kit," which are used three times at the end of plaintiff's commercial to denote the Nenette mops. Plaintiff also claims that defendants deliberately applied the word "Miracle" with the intent to mislead because of its similarity to "Magic."

■ As to the last mentioned claim, defendants established that their use of the word "Miracle" was entirely proper, free from any wrongful purpose and not contrived. The defendants, who distribute various consumer products through television advertising, used the name "Miracle" in 1975 to market a "painter," which substitutes for the normal paint brush, and expended hundreds of thousands of dollars in successfully advertising that product. In the following year they again used "Mira-

cle" in connection with a food slicer and again expended substantial sums in advertising the product nationally under that name. Defendants acquired some good will by their use of "Miracle" in the promotion of the "painter" and "slicer." The Court is satisfied that the defendants' use of "Miracle" for the marketing of their mop in their current promotional campaign is entirely proper and justifiably seeks to capitalize on the good will attaching to the prior successful promotional campaigns under the name "Miracle."[5] The fact that defendants have previously marketed products under the "Miracle" name serves to negate any likelihood that their duster will be confused with plaintiff's product sold under the name "Nenette." Defendants' commercials promoting the Miracle painter featured a man in a tuxedo painting the ceiling of a room; this "man in a tux" has since become identified in the public's mind with the defendants' products, and he is thus shown in the first segment of defendants' dust mop commercial using the Miracle Duster to clean venetian blinds. This use of the "man in a tux" in the dust mop commercial further serves to reduce the likelihood of product confusion.

■■ The several instances of misdirected mail, in and of themselves, are insufficient to sustain a finding of likelihood of confusion.[6] The ultimate test, as already

**4.** See Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607, 614 (2d Cir.), cert. denied, 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960); Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 542 (2d Cir. 1956); .Miles Shoes, Inc. v. R. H. Macy & Co., 199 F.2d 602, 603 (2d Cir. 1952), cert. denied, 345 U.S. 909, 73 S.Ct. 650, 97 L.Ed. 1345 (1953); Stix Prods., Inc. v. United Merchants & Mfrs., Inc., 295 F.Supp. 479, 493 (S.D.N.Y.1968); G. B. Kent & Sons, Ltd. v. P. Lorillard Co., 114 F.Supp. 621, 629–30 (S.D.N.Y.1953), aff'd, 210 F.2d 953 (2d Cir. 1954). The applicable standard is the same for plaintiff's claims under the Lanham Act, 15 U.S.C. § 1125, and under state common law. See Exquisite Form Indus., Inc. v. Exquisite Fabrics, 378 F.Supp. 403, 415 (S.D.N.Y.1974); Sears, Roebuck & Co. v. Allstate Driving School, Inc., 301 F.Supp. 4, 19 (E.D.N.Y.1969); Dell Publishing Co. v. Stanley Publications, Inc., 9 N.Y.2d 126, 211 N.Y.S.2d 393, 172 N.E.2d 656 (1961).

**5.** See S. C. Johnson & Son, Inc. v. Johnson, 175 F.2d 176, 180 (2d Cir.), cert. denied, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527 (1949) (L. Hand, C. J.).

**6.** See Union Carbide Corp. v. Ever-Ready Inc., 531 F.2d 366, 383 (7th Cir.), cert. denied, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976) (isolated instances of actual confusion or misdirected mail insufficient to sustain finding of likelihood of confusion); Everest & Jennings, Inc. v. E & J Mfg. Co., 263 F.2d 254, 260 (9th Cir. 1958), cert. denied, 360 U.S. 902, 79 S.Ct. 1284, 3 L.Ed.2d 1254 (1959) (showing of a mere trace of actual confusion insufficient); Sunbeam Lighting Co. v. Sunbeam Corp., 183 F.2d 969, 974 (9th Cir. 1950); T.G.I. Friday's, Inc. v. International Restaurant Group, Inc., 405 F.Supp. 698, 707 (M.D.La.1975) (few instances of misdirected mail and confusion insufficient to establish likelihood of confusion). Cf.

noted, is whether an appreciable number of ordinarily prudent prospective purchasers are likely to be deceived. This Court viewed both commercials and finds that plaintiff has failed to sustain its burden of proof. The thrust of plaintiff's commercial and its primary emphasis is upon the name "Nenette," which it uses in connection with its duster. Thus, the script states in part: "These people are talking about Nenette . . . .. Nenette is completely new in this country. Fifteen million people use Nenette." The word "Nenette" is thereafter repeated on nine additional occasions in sales-geared sentences. Plaintiff alleges that its dust mop is sold under the name of Magic Duster or Magic Dusting Kit, but the first and only reference to those words is at the end of the commercial, as follows:

TO ORDER YOUR NENETTE MAGIC DUSTING KIT COMPLETE WITH 2 MAGIC DUSTERS CALL 212 757–5150, THAT'S 212 757–5150, OR SAVE C.O.D., POSTAGE AND HANDLING BY SENDING $9.98 TO MAGIC DUSTERS, P.O. BOX 861, RADIO CITY STATION, NEW YORK 10019

In contrast, the emphasis of defendants' commercial is upon the Miracle Duster Kit, which it states is treated with its own chemical, Chemorex. This is repeated throughout. An ordinarily prudent viewer is not likely to be misled into believing that the Miracle Duster Kit advertising refers to plaintiff's product. A view of both commercials gives one the settled conviction that there is no basis to support a finding that an appreciable number of ordinarily prudent prospective purchasers would in likelihood be confused with respect to the origins of the two products. The commercials readily suggest that different concerns are advertising and stressing their own particular product. Substantially, the situation is similar to that of two automobile dealers selling different cars, which are nevertheless alike in appearance, and pointing out distinct parts in a sales pitch on a television commercial. No prudent viewer could reasonably be misled as to the dealer or source of origin.

On the totality of all the evidence, the Court finds that plaintiff has failed to sustain its burden of proof with respect to its claims of unfair competition under the common law and under the Lanham Act. Accordingly, the defendants are entitled to judgment on the merits.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

*Scarves by Vera, Inc. v. Todo Imports Ltd.,* 544 F.2d 1167, 1175 (2d Cir. 1976) (trademark infringement requires showing of likelihood to mislead "many customers.").