**UNICURE, INC., Plaintiff,**

**v.**

**Jeremy D. NELSON, Individually and d/b/a Creative Custom Packaging, Michael C. Filippelli, P T C International USA, Inc., Peter T. Underwood, and P. T. Chemicals, Ltd., Defendants.**

Civ. No. 79–681.

United States District Court,
W. D. New York.

Nov. 10, 1980.

Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y., Beveridge, DeGrandi, Kline & Lunsford, Atlanta, Ga., of counsel, P. Michael Lynch, III and George T. Lamb, Corporate Attys., Unicure, Inc., Norcross, Ga., for plaintiff.

John H. Stenger and David J. Calverley, Jaeckle, Fleischmann & Mugel, Buffalo, N.Y., for defendants Nelson and Filippelli.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Plaintiff seeks redress for alleged trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and breach of various principles of state law. Defendants Nelson and Filippelli have moved for summary judgment dismissing the Complaint against them. Plaintiff has moved to amend the Complaint to add Onyx Distributors Co. ("Onyx") and Trafalger Industries of Canada, Ltd. ("Trafalger") as defendants, to adjourn trial pending discovery against Onyx and Trafalger and for a trial by jury.

Plaintiff is a New York corporation formed in 1972 with its principal place of business in Georgia. Since 1973 plaintiff has engaged in the business of manufacturing and selling hair conditioner and shampoo under the trademark "Unicure." Unicure was registered as a trademark with the United States Patent Office under Registration Numbers 981,692, issued April 2, 1974, and 1,044,584 and 1,044,585, issued July 27, 1976. Plaintiff acquired the exclusive right to the use of said trademark in the United States in a complex series of transactions involving Richard Tucker ("Tucker"), President and majority shareholder of plaintiff, and several other companies.[1]

Nelson is a resident of Toronto, Ontario and is President of Trafalger. Trafalger is an Ontario corporation that engages in the manufacture and sale of Unicure hair products through a division known as Canadian

---

1. A & R Investments, Ltd. ("A & R"), a Canadian corporation formed by Tucker and one Allan Grodan ("Grodan"), entered into an agreement with Kaalund Fabrikker A/S ("Kaalund"), a Danish corporation, August 13, 1970, whereby A & R obtained the right to distribute a hair conditioner product developed by Kaalund. A & R decided to market said product under the name Unicure and registered Unicure as a trademark in Canada December 3, 1971. Tucker and Grodan apparently decided to go separate ways and Grodan formed his own company, Grodan Holdings Ltd. ("Grodan Holdings"), in 1972. By agreement June 22, 1972 between A & R, Grodan, Grodan Holdings, Tucker and E & R Equipment Sales, Inc. ("E & R"), a Canadian company formed by Tucker in 1966, A & R assigned its rights to market the Kaalund formula and to use the Unicure trademark to Grodan Holdings and E & R. Grodan Holdings and E & R each were permitted to operate in speci-

fied parts of the world. E & R was granted the market rights to the United States.

Tucker incorporated Unicure, Inc., plaintiff in this action, November 3, 1972 in New York. E & R assigned its marketing rights and license to use the Unicure trademark to Unicure, Inc. January 3, 1973. A & R, Grodan, Grodan Holdings, Tucker and E & R terminated their June 22nd, 1972 agreement August 30, 1973. Effective August 31, 1973, Grodan Holdings and Unicure, Inc. received from A & R the marketing rights and a license to use the Unicure trademark in specified countries. Unicure, Inc.'s market included the United States. Pacific Northwest Enterprises, Inc. ("Pacific Northwest"), a Canadian corporation owned solely by Tucker, purchased Unicure, Inc.'s marketing rights, except those rights with respect to the United States, March 1, 1977. Pacific Northwest then purchased Grodan Holding's marketing rights April 18, 1978.

Custom Packaging. According to Nelson's affidavit dated September 14, 1979, Trafalger conducts such business in Canada and certain other countries, not including the United States, pursuant to an agreement with Grodan Holdings, Ltd.[2] Nelson was a director of plaintiff from April 30, 1976 to February 22, 1977.

Filippelli is the manager of a bottling plant on Balmer Road in Youngstown, N.Y. ("the Youngstown plant"). Filippelli's September 14th, 1979 affidavit states that the plant is operated by the defendant P. T. Chemicals Ltd. ("P.T."), a Canadian corporation owned by defendant Peter Underwood ("Underwood").[3]

In May 1979 Nelson agreed to sell Unicure products to Onyx, a Canadian corporation engaged in the import and export business. Nelson states that he informed Onyx that Trafalger's rights to distribute Unicure products were limited. A letter dated May 27, 1979, said to be sent from Nelson to Onyx, is annexed to Nelson's September 14th, 1979 affidavit. The letter lists the countries in which Trafalger held Unicure marketing rights and states that:

> "* * *. it is imperative that you do not sell Unicure outside the countries listed below, as we do not hold the rights to market the registered trade name Unicure outside these countries * * *.
>
> "Any deviation from the above is entirely your Company's responsibility."

The United States was not included on Nelson's list of permissible countries. Onyx indicated an intent to distribute the Unicure products in France, which was a permissible country.

Nelson states that at the time of this initial sale to Onyx, Trafalger's manufacturing facilities in Canada were about to close down for the annual vacation period. Nelson therefore contacted Underwood and made an arrangement whereby Trafalger would send Unicure products and bottles to the Youngstown plant. P. T. agreed to bottle and prepare the Unicure for shipment. Nelson states that he informed Underwood that Unicure products bottled for Trafalger could not be sold in the United States. Trafalger continued to use P. T. to process further orders from Onyx because Nelson was aware that P. T. "was having a slow period starting operations and could use the business." Nelson and Filippelli both state that all Unicure products prepared by P. T. for Trafalger were sent to Onyx.

Plaintiff's Unicure products are sold in bottles. that bear labels with white lettering. The labels are printed in English. Nelson's Unicure bottles bear two–colored print in both English and French.

In the summer of 1979, George Lamb ("Lamb"), plaintiff's in–house counsel, became aware that Unicure products bearing Nelson's label might be entering the United States from Canada. Lamb's investigation of the matter led to commencement of this action September 5, 1979.

Trademark infringement in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), is a narrow, particular tort included within the general tort of unfair competition. *American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 664 (2d Cir. 1979); *Boston Pro. Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975). The basic test applicable to an alleged trademark infringement is whether "any appreciable number of ordinary purchasers are [sic] likely to be

---

**2.** See note 1, *supra*.

Nelson's right to engage in the marketing of Unicure products outside the United States is the subject of litigation in the Ontario Supreme Court. Such litigation does not appear to affect the issues raised in this action.

**3.** Tucker's March 27, 1980 affidavit states that Creative Custom Packaging, a company said to be formed by Nelson to manufacture Unicure products for plaintiff from October 1973 to the summer of 1976, located a plant on Balmer Road in Youngstown. It is unclear whether P. T. and Creative Custom are the same company which has been sold and changed its name, whether P. T. and Creative Custom both operated plants or shared a plant in Youngstown, or whether Filippelli's or Tucker's affidavit is inaccurate. For the purposes of this Memorandum and Order, I will treat the P. T. and Creative Custom plant(s) as one and the same.

confused as to the source of the products which they are buyir ɜ." *Corning Glass Works v. Jeannette Glass Co.*, 308 F.Supp. 1321, 1325 (S.D.N.Y.), aff'd 432 F.2d 784 (2d Cir. 1970). The same "likelihood of confusion" test is applicable under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *B. D. Communications, Inc. v. Dial Media, Inc.*, 429 F.Supp. 1011, 1014, n.4 (S.D.N.Y.1977); *Rolls–Royce Motors Ltd. v. A & A Fiberglass, Inc.*, 428 F.Supp. 689, 697 (N.D.Ga. 1976). Nelson's and Filippelli's motion for summary judgment is based on their contention that they have not distributed Unicure products in the United States and that therefore there is no likelihood of confusion between Nelson's and plaintiff's products. Plaintiff argues that distribution of Unicure by defendants in the United States is not an essential part of its cause of action.

Plaintiff's argument is correct in that trademark infringement does not require actual competition between the parties. *Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167 (2d Cir. 1976); *Professional Golfers Ass'n v. Bankers L. & C. Co.*, 514 F.2d 665, 669–70 (5th Cir. 1975); *D C Comics, Inc. v. Powers*, 465 F.Supp. 843, 848 (S.D.N.Y.1978). However, plaintiff seeks to prove too much by this argument. The case law seems clear that a trademark infringement will not be found unless confusion as to the source of goods exists in the market area served by the plaintiff or in an area into which plaintiff is reasonably likely to expand. *Continente v. Continente*, 378 F.2d 279, 282 (9th Cir. 1967); *American Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619, 626 (5th Cir. 1963); *Dawn Donut Company v. Hart's Food Stores, Inc.*, 267 F.2d 358, 364 (2d Cir. 1959); *National Automobile Club v. National Auto Club, Inc.*, 365 F.Supp. 879, 885 (S.D.N.Y.1973), aff'd without opinion, 502 F.2d 1162 (2d Cir. 1974). As the United States Court of Appeals for the Second. Circuit has recently explained:

> "* * * trademark rights, unlike statutory copyrights or patents, are not rights in gross or at large. 'There is no such thing as property in a trade–mark except as a right appurtenant to an established business or trade in connection with which the mark is employed.' *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 [39 S.Ct. 48, 50, 63 L.Ed. 141] * * * (1918). The right, therefore, to exclusive use of a trademark derives from, and is limited by, its actual use in the marketplace. *La Societe Anonyme des Parfums LeGalion v. Jean Patov, Inc.*, 495 F.2d 1265, 1271 (2d Cir. 1974)." *American Footwear Corp. v. General Footwear Co.*, supra, at 663–64.

Thus, while actual competition is not a prerequisite to a finding of trademark infringement, some overlap between the parties' trademark usage must exist before a likelihood of confusion in violation of 15 U.S.C. §§ 1114 and 1125 can be found.[4]

---

**4.** Plaintiff's memorandum of law in opposition to the summary judgment motion states that "plaintiff holds the exclusive worldwide rights to the mark 'UNICURE.' " This statement is not supported by the affidavits submitted on behalf of plaintiff. The affidavits show that plaintiff's right to use the Unicure trademark is limited to the United States and that such right belongs to Pacific Northwest outside the United States. *See* note 1, *supra*. Plaintiff's memorandum also states that acquisition of the worldwide rights to use "Unicure" by Pacific Northwest and plaintiff evidences an intent by them to expand their markets outside the United States. Pacific Northwest is not a party to this action and I am at a loss to see how its rights may be asserted by plaintiff herein. Nor do I understand how plaintiff may be said to have the intent to expand its market outside the United States when, according to plaintiff's own statements, Pacific Northwest possesses the exclusive right to use the Unicure trademark in other countries.

Plaintiff has also submitted evidence that it has conducted a nationwide advertising campaign for the sale of Unicure products. Plaintiff suggests that this evidence renders my opinion in *Miller Brewing Co. v. Carling O'Keefe Breweries*, 452 F.Supp. 429 (W.D.N.Y. 1978), controlling in this action. In *Miller*, I held that the *defendant's* use of a trademark in commercials aired in the United States gave the court jurisdiction over a claim of trademark infringement, even though defendant's products were not actually sold in the United States, *Miller Brewing Co. v. Carling O'Keefe Breweries, supra*, at 442, and that such advertising was likely to cause confusion as to the source of the goods. *Id.*, at 447. The use of a trademark in advertising by a plaintiff is an entirely different, unrelated matter.

Nevertheless, I find that defendants' summary judgment motion must be denied because the record does contain competent evidence that infringing Unicure products were distributed in the United States.[5] Affidavits submitted by Lamb, United States Customs Agent John Lowe, and Albert Musone, manager of Oneida Motor Freight, Inc. ("Oneida") in Tonawanda, N. Y., establish that 2100 cases of hair conditioner bearing Nelson's Unicure labels were seized by customs officers at Oneida's Tonawanda terminal some time in the fall of 1979. Each case contained 12 bottles of hair conditioner. The hair conditioner had been delivered to Oneida by Onyx September 9, 1979 for shipment to the consignee, L. S. Amster, Inc., in Westbury, N. Y.[6] Under the criteria established in *Coca–Cola Co. v. Snow Crest Beverages*, 64 F.Supp. 980, 989 (D.Mass. 1946), and adopted by the United States Court of Appeals for the Second Circuit in *Ives Laboratories, Inc. v. Darby Drug Co., Inc.*, 601 F.2d 631, 636 (1979), Nelson and Filippelli may be liable for Onyx's use of the Unicure trademark in the United States if they had reason to anticipate such wrongful conduct. At most, defendants' affidavits establish that Onyx's shipment of Unicure into the United States was contrary to their directions and without their actual knowledge. The affidavits do not show that Nelson and Filippelli had no reason to foresee Onyx's use of the Unicure trademark in the United States. Thus, plaintiff's evidence that Onyx shipped hair conditioner bearing the Unicure trademark into the United States raises a genuine issue of fact concerning the potential liability of Nelson and Filippelli. Accordingly, Nelson's and Filippelli's motion for summary judgment is hereby ORDERED denied.

Nelson and Filippelli oppose plaintiff's motion to amend the Complaint on the grounds that such amendment will unreasonably delay disposition of the case. However, in view of the evidence regarding possible wrongdoing by Onyx and inasmuch as Nelson's summary judgment motion has been denied, plaintiff's motion to amend the Complaint to add Onyx and Trafalger as defendants and to request a trial by jury is hereby ORDERED granted, subject only to the requirement that said Amended Complaint shall be filed and served within thirty days after entry of this Order. My Order dated April 23, 1980, in which I stayed Nelson's obligation to respond to requests for discovery pending decision on the summary judgment motion, is hereby ORDERED vacated. Trial shall be adjourned pending discovery.

---

**5.** Most of the evidence which purports to establish distribution of Unicure by defendants in the United States is hearsay and therefore may not be considered on this motion.

**6.** L. S. Amster, Inc. is a dealer in Unicure products. It refused to accept delivery of the shipment from Onyx, presumably because Lamb had informed company representatives that the goods were being marketed in violation of plaintiff's trademark rights. The shipment was then returned to Oneida's terminal in Tonawanda, where it was seized by customs officials pursuant to 19 U.S.C. § 1526. The constructive seizure was rescinded December 21, 1979 and the shipment was released to Oneida.