46 CCPA

## Application of MEYER & WENTHE, INC.
### Patent Appeal No. 6447.

United States Court of Customs
and Patent Appeals.
June 30, 1959.

Watson D. Harbaugh, Chicago, Ill., and Robert B. Harmon, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WARREN E. BURGER.[1]

MARTIN, Judge.

This is an appeal from the decision of the Commissioner of Patents, acting through the Assistant Commissioner, affirming the decision of the Examiner of Trademarks refusing to register "Official" as a trademark for seal presses.

Appellant affixes the mark in question on a press designed to removably receive various dies for impressing embossed seals. The seals impressed may be of any character such as the familiar corporate or notarial seals, or otherwise personalized impressions.

The Commissioner held that the term "Official," as applied to such presses, " * * * has a single primary connotation which embraces at one and the same time the press, the die and the impression made." It was found that the impressions made by the dies are commonly used to attest or to authenticate documents and as such are "official seals," pertaining to the authority of some office. So finding, the Commissioner then con-

---

1. United States Circuit Judge for the United States Court of Appeals for the District of Columbia Circuit, designated to participate *in place of Judge O'Connell,* pursuant to the provisions of Title 28 United States Code § 291(b).

cluded that "* * * the word does not and cannot, in the minds of ultimate purchasers, identify and distinguish applicant's goods."

In reaching the conclusion that "Official" "* * * does not and cannot * * *" become distinctive of applicant's goods, several affidavits submitted by applicant from manufacturers of competitive products and distributors of applicant's products, introduced in an attempt to show such distinctiveness, were considered.

Appellant contends that the Commissioner erred in determining "Official" to be descriptive of seal presses, as well as of the impressions made by such presses when containing appropriately stamped dies. Appellant urges that the vast majority of its sales are of presses with blank dies, and in no sense can such devices be described as "official seals" since they are incapable of delivering an impression.

It is further claimed that the affidavits submitted by the competing manufacturers, jobbers, and dealers are representative of 90% of the purchasers of appellant's seal presses, and that these affidavits are sufficient to establish that "Official" has become distinctive of the applicant's goods in commerce. Appellant therefore argues that the Commissioner erred in considering the "minds of ultimate purchasers" in reaching the conclusion that the word in issue "* * * does not and cannot * * * identify and distinguish applicant's goods."

There is no question but that the word "Official" is basically descriptive of *seals* and that its primary meaning in connection therewith relates to the authenticity of an impression or configuration of an authentic design, and of the device which imparts the impression of the design on soft substances. However, in spite of this primary meaning we do not believe that "Official" comes within the category of words which cannot become distinctive of an applicant's goods in commerce such as "Carillonic Bells" for electronically operated carillons,[1] or "Consistently Superior" for bakery goods.[2] If the proper proof of its distinctiveness is presented, we believe that "Official" can be registered as a trademark to identify the origin of an article which imprints authentic designs and of the dies upon which the designs are cast, under the provisions of section 2(f)[3] of the Trade-Mark Act of 1946.

The United States Supreme Court and other courts, including ours, have discussed the type of evidence which is required to give descriptive words the characteristic of being distinctive in the trademark sense. In Kellogg Company v. National Biscuit Company, 305 U.S. 111, 59 S.Ct. 109, 113, 83 L.Ed. 73, the Court stated:

"* * * But to establish a trade name in the term 'shredded wheat' the plaintiff must show more than a subordinate meaning which applies to it. It must show that the primary significance of the term in

1. Schulmerich Electronics, Inc. v. J. C. Deagan, Inc., 202 F.2d 772, 40 C.C.P.A. 857.

2. In re Duvernoy & Sons, Inc., 212 F.2d 202, 41 C.C.P.A. 856.

3. Trade-Mark Act of 1946, § 2(f):
"No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
* * * * *
"(f) Except as expressly excluded in paragraphs (a), (b), (c), and (d) of this

section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next preceding the date of the filing of the application for its registration." 15 U.S.C.A. § 1052.

the minds of the consuming public is not the product but the producer. * * * ''

This court in Master, Wardens, Searchers, Assistants and Commonalty of Co. of Cutlers in Hallamshire, York County v. Cribben and Sexton Co., 202 F.2d 779, 784, 40 CCPA 872, said:

"The proper construction of Section 2(f) of the Act of 1946 was exemplified by Federico, Examiner-in-Chief of Trade-Marks, acting for the Commissioner of Patents, in Ex parte Pocket Books, Inc., 91 USPQ 182, 184–185. There the Acting Commissioner held the burden of proof rests upon the applicant to establish that the mark of the applicant has become distinctive in commerce, and distinctiveness as a trade-mark should not be recognized without completely overwhelming proof with respect to all aspects of the matter:

" 'It seems to me that before it can be stated that a word which is a generic designation of an article can be considered as having acquired the status of a trade mark of a single company for that same article, more should be shown than use by the applicant and the harmonious attitude of the trade. *It would appear that before the word could be considered a trade mark, it must have become practically obsolete as a generic name for the article and must be recognized by the public as a trade mark rather than as a generic term of the English language.'*

"The factual situation upon which the applicant relies in the case at bar is strikingly similar to the situation in Ex parte Pocket Books, Inc. The mere affidavit of appellee's secretary together with the testimony of several witnesses clearly does not constitute a sufficient basis for appellee's registration of the mark 'Sheffield' for use on stoves and ranges in this and foreign countries."

However, in In re Hollywood Brands, Inc., 214 F.2d 139, 140, 41 CCPA 1001, our court reviewed the opinion in the Master case, and stated: [4]

"There is no doubt that Congress intended that the burden of proof should rest upon the applicant for registration, but it set up no standard by which the 'distinctiveness' of a mark was to be determined other than to suggest that substantially exclusive and continuous use of a mark in commerce for the five years immediately preceding application for registration could be considered as prima facie proof that it had become distinctive.

"The cases cited by the respective counsel have been examined but we find none of them sufficiently in point to be controlling; we do find, however, an increasing tendency to require more and still more proof from an applicant for registration under Section 2(f) than we think Congress fairly intended to impose. For example, the broad language used in the case of Master, Wardens, Searchers, Assistants and Commonalty of Co. of Cutlers in Hallamshire, York County v. Cribben and Sexton Co., 202 F.2d 779, 40 CCPA 872, 878, was not necessary to the proper disposition of that controversy nor do we think it applicable to the facts at bar."

As to the question of what evidence is required to establish that the purchasing public identifies the manufacturer by a specified mark our court in In re Duvernoy & Sons, Inc., supra, said [212 F. 2d 203, 41 CCPA 856]:

"The appellant seemingly concedes that the term in question is, in a sense, laudatory or exclamatory and would require proof of the most convincing character to support a claim to distinctiveness. The affidavits relied upon to establish such distinctiveness, as applied to the appellant's goods, do not, however, sufficiently

4. See also In re True Temper Corp., 219 F.2d 957, 42 CCPA 790.

reflect the views of the purchasing public with respect thereto, being attestations from persons in close association and intimate contact with its business. We are in entire agreement with the Solicitor for the Patent Office in his statement that 'such persons would be much more familiar with the words and devices employed by bakers than would members of the general public. It follows that the fact that these experts recognize a connection between the appellant and words "Consistently Superior" is insufficient to establish that the public would recognize such a connection.' Accordingly, despite the long and widespread usage of the term in question, it is our belief that the appellant has failed on the record to establish the requisite public understanding necessary to registration under section 2(f), supra."

In this connection the Circuit Court of Appeals in Steem-Electric Corp. v. Herzfeld-Phillipson Co., 7 Cir., 118 F.2d 122, 125, stated:

"Assuming that plaintiff's testimony in this respect furnishes some support for its contention that the trade-mark 'Steem-Electric' carried a secondary meaning, it must be remembered that its dealers and agents, exclusively engaged in purchasing and selling its product, would naturally associate with plaintiff the product sold under its tradename. It does not follow that the public or any considerable portion thereof would be thus impressed."

■■ Even though we can draw some general principles from these above cited cases which can serve as guides in deciding the case at bar, this controversy must, as in all cases, be decided upon the specific facts as they appear in the record. However, the following general principles have been established. First of all, the applicant has the burden of

proving the distinctiveness of his mark by showing by clear and convincing evidence that the mark identifies the producer or manufacturer and not just the product. In some instances "proof of substantially exclusive and continuous use * * * [of the] mark by the applicant in commerce for the five years next preceding the date of the filing of the application * * * " [5] may be sufficient. On the other hand, when the word is not only descriptive but, as here, connotes an authorized activity, much stronger proof is required.

■ It is incumbent upon the applicant to submit proof that its mark is distinctive, not only to "experts" in the field, but to the purchasing public. Although in some instances numerous affidavits of retailers [6] are all that would be required to establish *implied* recognition by the ultimate consumers, in others, in order to be convinced that the purchasing public identifies the producer of the goods by the mark, consumer affidavits would be in order.[7]

Coming now to the evidence in this case, there is an affidavit by applicant's president, and five others; three representing jobbers, one a competitor and one a dealer.

In so far as the affidavit of the president of applicant is concerned it does not meet the requirements of section 2(f) in establishing a prima facie case. In fact, there is no reference to substantially exclusive and continuous use of the mark by the applicant in commerce for the five years next preceding the filing of the application. We find this affidavit to have no probative value.

The other five affidavits offered in evidence state, *inter alia*, that the affiants identify appellant's seal presses by the designation "Official"; that their customers order the presses by this designation; that the word "Official" identifies the seals as made by the applicant, Meyer & Wenthe, Inc.; and that this designation has been known to affiants

5. Section 2(f), Trade-Mark Act of 1946.

6. In re Hollywood Brands, Inc., supra.

7. In re Duvernoy & Sons, Inc., supra.

for over ten years. Except for the affidavit of the dealer the other four affidavits, in using the word "customers," refer to retailers and not to the ultimate consumer. In some instances, where it may be obvious from other evidence that the general consuming public identifies the origin of the product by the mark in question in the same fashion as do the "experts" in the trade, "expert" affidavits would be sufficient; nevertheless, we do not believe that such affidavits are sufficient to maintain applicant's position here.

For these affidavits represent the views of persons in " * * * close association and intimate contact * * * " [8] with the applicant; in fact, various of the declarants are " * * * exclusively engaged in * * * selling its product * * *," [9] and thus would be expected to readily identify the origin of the goods. It remains to be seen whether the public would infer a similar association. Although the affidavit of the dealer refers to the consuming public in using the word "customers" we do not believe that in stating " * * * our customers consistently ask for pocket seals by the trademark name 'Official' * * * " that this affiant has established that these purchasers considered the word official anything more than a descriptive term being used in its primary sense.

Other evidence introduced by applicant includes Meyer & Wenthe's catalogs and price lists mailed to the trade, bulletins and stuffers showing that the word "Official" has been used in connection with the particular seal press and dies offered for sale. Of course, this material does not establish that the *consuming public* identifies the origin of this article by the word "Official." Furthermore, one of the displays in the catalog under the term "County" seal states:

"An extra heavy Press for Great Seals used by States, Counties and Cities. Also for *Official Court Seals* and Seals for various Governmental Departments and Agencies" [Emphasis added].

Evidently, even applicant uses the word official in its primary sense in advertising its merchandise. Also, we notice on the same page besides "County" seal, the presence of "Consular" seal. Except for the fact that more material has been placed in the record involving the "Official" seal, we see no reason to treat this mark any differently than "County" or "Consular" seals in so far as this record is concerned.

Under these circumstances, where the word involved has not only a primary descriptive connotation but also carries with it a note of authority, much more than the evidence introduced by applicant is necessary to show that "Official" has become distinctive of the applicant's goods in commerce.

For the above reasons we affirm the decision of the Commissioner of Patents.

Affirmed.

WORLEY, C. J., did not participate in decision because of illness.

46 CCPA

8. In re Duvernoy & Sons, Inc., supra.

9. Steem-Electric Corp. v. Herzfeld-Phillipson Co., supra.