PLAINS TIRE AND BATTERY COMPA-
NY, a Wyoming Corporation,
Appellant (Plaintiff),

v.

PLAINS A TO Z TIRE CO., INC., a
Wyoming Corporation, Appellee
(Defendant).

No. 5321.

Supreme Court of Wyoming.

Jan. 19, 1981.

Kathleen H. Fedore, Smith, Stanfield & Scott, Laramie, for appellant.

John D. Erdmann, Guy, Williams, White & Argeris, Cheyenne, for appellee.

Before ROSE, C. J.*, McCLINTOCK, RAPER **, THOMAS and ROONEY, JJ.

McCLINTOCK, Justice.

Two companies, both of which are in the business of selling tires and automotive accessories and services in Laramie, Wyoming, and both of which use the terms "Plains," "Tire" and "Company" in their names, are parties to the present litigation. Plains Tire and Battery Company, Inc., filed a complaint against Plains A to Z Tire Company, Inc., seeking to enjoin defendant from using the name Plains A to Z Tire Company, Inc., and also to recover damages for the alleged trade-name infringement. After trial to the district court, the trial judge found generally for defendant and against plaintiff. We reverse the judgment and remand with directions.

On appeal, appellant Plains Tire and Battery Company raises three issues:

1. The trial judge erred in failing to find that the terms "Plains" and "Tire" acquired a secondary meaning in the Laramie, Wyoming area.

2. The trial judge's decision was inconsistent with the "substantial and uncontradicted evidence presented" at trial.

3. The trial judge erred in failing to award damages.

Both companies have a common origin. Beginning in 1945, four men, A. T. Gibbs, Charles L. Peters, W. E. Lawson and Ivan T. Spratt, who had all previously worked for Gates Rubber Company in Denver, Colorado, established various tire and automo-

* Chief Justice since January 5, 1981.

** Chief Justice at time of oral argument.

tive equipment businesses in Cheyenne and Laramie, Wyoming.

Appellee's predecessor in interest, Plains Motors, Inc., was located in Cheyenne and incorporated in the State of Wyoming in 1950. In 1952 Plains Motors was consolidated with another preexisting business, A to Z Tire Company, which was also located in Cheyenne, Wyoming. After the consolidation, the corporate name was changed to Plains A to Z Tire Company, Inc. In 1966 Melvin E. Lenhardt, who is presently president and principal stockholder of the business, purchased Plains A to Z Tire Company, Inc.

Until 1971 Plains A to Z Tire Company's trading area consisted solely of Cheyenne, Wyoming. Since that time, appellee has expanded its trading area with branch stores in Wheatland and Laramie, Wyoming. Appellee also opened a branch store in Scottsbluff, Nebraska that was no longer in operation at the time of trial. Before Plains A to Z Tire Company opened its branch store in Laramie in January of 1978, it began sending a salesman to Laramie in September of 1971. The salesman primarily solicited commercial accounts. During this time appellee also ran an advertisement in the yellow pages of the Laramie phone book listing its Cheyenne address and phone number. During this period, Lenhardt indicated that he began looking for a building to house a branch store in Laramie. Lenhardt indicated that

"... we noticed the market potential [in Laramie] was much greater after Mr. Stratch came to work for me back in '74 or '75, I'm not sure of the year, and due to the fact that Mr. Stratch knew all of these accounts over here."

Before Stratch began working for Lenhardt, he was part owner of Wytox Service Center, located in Laramie. Wytox Service Center engages in essentially the same enterprise as the parties to this appeal. Stratch sold his interest in Wytox Service Center before he came to work for Lenhardt. The sales contract included a covenant preventing Stratch from competing with a Mr. McKinney, the purchaser of Wy-

tox. The right to enforce the covenant was litigated and the trial court held in favor of Mr. McKinney. However, as Lenhardt testified,

"... shortly after the decision was handed down, Mr. McKinney then sold Wytox Service Center and upon Mr. McKinney's selling Wytox Service Center he then got a hold [sic] of Mr. Neil Stratch and asked him if he would be willing to pay a sum of money to declare that contract void and Mr. Stratch and Mr. McKinney worked out some type of arrangement as far as a cash settlement."

During the time that appellee's predecessors in interest were being established in Cheyenne, appellant's predecessor in interest was being established in Laramie. Appellant's predecessor in interest, Plains Tire and Battery Company No. 2, Inc., was established in December of 1945 and was incorporated the next year. In 1947, the original owners of this business sold it to Vernon Wilkinson and Sy Gerstner. A certificate of dissolution was filed in 1951 and, thereafter, the business continued to operate as a partnership under the name Plains Tire and Battery Company, until the death of Mr. Wilkinson in 1976. After his partner's death, Gerstner operated the business until 1977 when he sold Plains Tire and Battery Company to Larry C. Nicholls, Vickie Nicholls and Carl E. Malouf. The business was once again incorporated in 1977.

The trading area has basically remained the same from the time Wilkinson and Gerstner purchased the business until the present. The trading area includes all of Albany County, Hanna, Arlington, Medicine Bow and Rock River, Wyoming, and Walden, Colorado. The new owners of Plains Tire and Battery Company have also opened a branch store in Rock Springs, Wyoming.

The testimony indicates that at one point in 1977 Lenhardt looked into the possibility of purchasing Plains Tire and Battery Company. He did not do so because the location

was not suitable for the type of commercial business in which appellee engages.[1]

After learning that Lenhardt intended to open a branch store in Laramie, Nicholls had his attorney write to Lenhardt requesting that Lenhardt refrain from using the word "Plains" in the business name. The letter provides in part:

"As you are probably aware, my client's business name has been used in Laramie in excess of 30 years and it has established considerable business recognition employing that name. My client wishes to have your assurance that you did not plan to use the word 'Plains' with respect to conducting tire or automotive accessories sales in Laramie."

Lenhardt made no formal response to this request but did use the word "Plains" in his trade-name when he opened a branch store in Laramie.

### I. TRADE–NAME INFRINGEMENT

█ Plains Tire and Battery Company contends that the trial judge's decision is clearly erroneous because it is not supported by the evidence. The question of trade-name infringement is largely one of fact, *Wyoming National Bank of Casper v. Security Bank & Trust Co.*, Wyo., 572 P.2d 1120, 1125 (1977), and as we have often reiterated, questions of fact are to be determined by the trier of fact. We will not substitute our view of the facts for that of the trier of fact, and findings will only be set aside upon appeal if they are "clearly erroneous or contrary to the great weight of evidence." *Kvenild v. Taylor*, Wyo., 594 P.2d 972, 976 (1979). Even if there are no specific findings of fact, a judgment carries with it every finding of fact supporting the successful party that "can be reasonably and fairly drawn from the evidence." *Kvenild*, supra, 594 P.2d at 976.

In *Safeway Stores v. Rudner*, 9 Cir., 246 F.2d 826 (1957), the Ninth Circuit Court of Appeals reversed the district court's decision denying plaintiff's request for an injunction enjoining defendant from using the trade-name Safeway. The appellate court found:

"The evidence showed that, when the action was brought and at all times thereafter, there was a likelihood—a probability, if not a certainty—that, unless enjoined, appellee's use of the trade name 'Safeway' would greatly and irreparably damage appellant. That showing was sufficient to entitle appellant to injunctive relief." *Safeway Stores*, supra, 246 F.2d at 830.

█ While we are always reluctant to set aside a trial court's judgment where the question presented requires a factual determination, this reluctance does not prevent such action if we find little or no evidence to support the judgment. *Kvenild*, supra, 594 P.2d at 976. We agree with appellant. There is no evidence in the record to support the trial court's judgment.

Trade names and trademarks used in connection with a service or product over time create a commercial magnetism, and the law protects this psychological effect. "The controlling principle is that a person may not pass off his goods or his business as the goods or business of another." *Standard Oil Company v. Standard Oil Company*, 10 Cir., 252 F.2d 65, 72 (1958).

█ In order to take advantage of this legal protection the party seeking relief must prove that there has been a trade-name infringement. To do so, the moving party must prove: First, that the trade name used by the offending party is deceptive or confusing, in that the words or symbols are whimsical and not descriptive of the goods or services, or that the trade name has acquired a secondary meaning; second, that the public is or will be confused and deceived by the use of a similar trade name. *First National Bank of Lander v. First Wyoming Savings and Loan Association*, Wyo., 592 P.2d 697, 703; and Annot., 150 A.L.R. 1067, 1069.

Words that are whimsical or not descriptive of the goods or services have been held

---

1. In addition to supplying automobile tires and related automobile accessories, Plains A to Z Tire Company, Inc., also supplies tires and related services for commercial trucks.

to be exclusive. However, words that are descriptive or geographical have been held to be nonexclusive because of public policy. *Bernstein v. Friedman*, 62 Wyo. 16, 160 P.2d 227, 229 (1945); and *American Plan Corp. v. State Loan & Finance Corp.*, 3 Cir., 365 F.2d 635, 638 (1966).

The trade names Plains Tire and Battery Company, Inc., and Plains A to Z Tire Company, Inc., do not appear to be deceptive or confusing on their face and the words common to both are generic and geographical. Therefore, it must be determined whether there was substantial evidence presented at trial to establish that the trade name Plains Tire and Battery Company has acquired a secondary meaning in its trading area. Appellee does not contend that a secondary meaning was not established.

### A. *Secondary Meaning*

To establish that a trade name has acquired a secondary meaning, the party seeking relief must prove that the customers have associated the trade name with the source of the goods or services, rather than associating the trade name with the goods or services, themselves. *Boron Oil Company v. Callanan*, 50 Mich.App. 580, 213 N.W.2d 836, 838 (1973). When considering whether a secondary meaning has been established, the trier of fact must take into consideration the length of time that a trade name has been connected with the goods or services and the extent of the advertisement. *Wyoming National Bank v. Security Bank & Trust Co.*, Wyo., 572 P.2d 1120, 1124 (1977). By extent, we mean the amount of money spent on advertisement, the method employed and the amount of advertisement that was done. *Wyoming National Bank*, supra.

Here, Mr. Gerstner testified that during the thirty-some years that he and his partner operated Plains Tire and Battery Company they continually advertised in the newspaper and on the radio. The extent of the advertising varied. Mr. Gerstner estimated that the amount spent ranged from $50 to $300 a month, and the evidence presented at trial showed that in 1974 $4,481.82 was spent on advertising and in 1975 $4,860.00 was spent on advertising.

Mr. Gerstner also testified that the name Plains Tire and Battery Company is a valuable asset and that he had spent thirty-one years building up the name. As he stated:

"It [the name Plains Tire and Battery Company] represented a lot of sweat and blood. I'll tell you, we built that name up from nothing. When we bought the place, it had a bad name, in fact. We didn't know it and it took us quite a few years to build that name up here in Laramie so it did mean quite a bit to me, you bet."

Mr. Nicholls, one of the purchasers of Plains Tire and Battery Company, stated that he paid more money for the business than the actual building, equipment and inventory was worth because he was buying the name Plains Tire and Battery Company. As Nicholls stated:

"... [W]ith my experience with Michelin in their early days of marketing in the United States, by and large their dealers were the best or the most respected dealers in a given city and the fact that they had been there for thirty some odd years, we felt that even though we could buy land and build a building cheaper and probably get a better location, that because the business had been in business for thirty years, was doing a respectable business and had a good name and Michelin products line which was the same as our product line, that it made sense to pay more money and buy that business rather than try to start our own business up from scratch."

While there was no specific price attached to the sale of the trade name, the sales contract does provide that "[s]eller hereby transfers and sells to the buyer all advertising leases and the trade name of Plains Tire and Battery exclusively for buyer's use...."

After purchasing the business in 1977, Nicholls testified that he continued to use the name Plains Tire and Battery Company and that he significantly increased the amount of advertisement. He still adver-

tised the business in the newspaper and on the radio, and he has spent an estimated $25,000 a year on advertisement.

There is substantial evidence to support a finding that the trade-name Plains Tire and Battery Company acquired a secondary meaning in the trade area. Therefore we cannot support the trial court's judgment that necessarily implies that no secondary meaning attached to the name Plains Tire and Battery Company.

### B. *Confusion*

Having found that a secondary meaning attached to the name Plains Tire and Battery within its territory, the real issue is whether the use of the name Plains A to Z Tire Company, Inc., in appellant's territory has had the effect of creating the impression in the minds of ordinary purchasers, who are using due care, that the products and services sold under that name are Plains Tire and Battery Company, Inc.'s products and services.

Plains A to Z Tire Company contends that appellant has failed to prove:

1. That the names of the businesses are "the same or deceptively similar";

2. That significant confusion has or is likely to occur because of the use of the two names;

3. That appellee had a fraudulent intent when it used the name Plains A to Z Tire Company.

Appellee further contends that this three-step evaluation is "sequential." Failure to meet the burden of proving any one of these facts would automatically require that judgment be granted in favor of the defendant. Plains A to Z Tire Company also claims that it has a "better claim to the right to use the word 'Plains.'"

In *Standard Oil Company*, supra, cited with approval in *Wyoming National Bank*, supra, a case which we consider most pertinent to the case at bar, the Tenth Circuit Court of Appeals upheld the district court's finding that the use of the designation "Sohio" in plaintiff's territory, whose trademarks included "Standard Oil," "Standard,"

"SO," "SO Co.," "S O C O," and "Solite" amounted to unfair competition and to an infringement upon the plaintiff's rights. In carefully setting forth the rule concerning a finding of confusion, the court said:

"This court has announced the following controlling rule:

" 'It is the generally accepted rule that a designation is confusingly similar to a trade-mark if an ordinary prospective purchaser, exercising due care in the circumstances, is likely to regard it as coming from the same source as the trade-marked article. * * * The question is usually one of fact * * * which in some cases may be determined by visual comparison, as where specific differences are so marked that the general appearance could not be confusing, * * * or where it is inconceivable that an ordinary purchaser examining the two labels would be deceived. * * * In other cases extrinsic evidence may be necessary.' " (Footnotes omitted.)

In rejecting the defendant's contention that a lack of confusing similarity can be conclusively established by a visual comparison of the "oval 'Sohio' sign with the torch and oval 'Standard' sign of the plaintiff and with the plaintiff's other trade-marks 'SO,' 'SO Co.,' 'S O C O,' and 'Solite,' " *Standard Oil Company*, supra, 252 F.2d at 73, the court stated:

"While in some cases, particularly those involving labels, the question of confusing similarity may be determined by visual observation of the words, signs, or symbols involved, the test is not solely such a 'juxtapositional comparison.' The setting in which the designations are used must be considered. As said in *Avrick* [*Avrick v. Rockmont Envelope Co.*, 10 Cir., 155 F.2d 568], supra, 155 F.2d at pages 572–573:

" 'It is the total effect produced by the designation in the mind of the ordinary purchaser, exercising due care in the market place,' " (Footnotes omitted.) *Standard Oil Company*, supra, 252 F.2d at 73.

The court goes on to point out that the parties "are engaged in identical enterprises" and "[t]hey draw their customers from the same sources." *Standard Oil Company*, supra, 252 F.2d at 73.

The court then concludes:

"Infringement is not to be determined on the basis of the words or symbols themselves to the exclusion of other considerations. It is not necessary for similarity to go only to the eye or the ear for there to be infringement. The use of a designation which causes confusion because it conveys the same idea, or stimulates the same mental reaction, or has the same meaning is enjoined on the same basis as where the similarity goes to the eye or the ear. Confusion of origin of goods may be caused alone by confusing similarity in the meaning of the designations employed. The whole background of the case must be considered." (Footnotes omitted.)

To begin with, we cannot agree with appellee's contention that the evaluation is sequential. As the *Standard Oil Company* court pointed out, all of the facts in each particular case must be considered before making a determination as to whether or not there has been a trade-name infringement. "Infringement is not to be determined on the basis of the words or symbols themselves to the exclusion of other considerations." *Standard Oil Company*, supra, 252 F.2d at 73–74. In 3 Callman, Law of Unfair Competition, Trademarks, and Monopolies, § 80 at p. 538 (3d Ed. 1969), it is stated:

"It is the gravamen of an action for trademark infringement that the defendant's use of a trademark similar to the plaintiff's created a likelihood of confusion. The similarity of the trademarks is the potential source of such confusion and, in this context, exact similitude is not a *sine qua non*. Even trademarks that are not Siamese twins may, in general appearance or impression, be sufficiently similar to suggest a likelihood of confusion."

Appellee's first contention is that the two names are not deceptively similar. We have already ruled that the use of the generic and geographical terms, "Plains," "Tire" and "Company" are not deceptive on their faces. However, this determination alone does not require a finding that there has not been a trade-name infringement. Nor can we agree with appellee that the Secretary of State's determination that " 'PLAINS TIRE & BATTERY CO., INC.' was not deceptively similar to the existing corporation 'PLAINS A TO Z TIRE CO., INC.' " should be accepted by this court "unless it is clearly wrong as a matter of law." In *First National Bank of Lander*, supra, 592 P.2d at 700, this court held that as a general rule administrative determinations as to whether corporate names are deceptively similar is "not conclusive as to the right to use the name." And as said in 3 Callman, Law of Unfair Competition, Trademarks, and Monopolies, § 80.6 at p. 565:

"Confusion is not to be denied merely because an administrative authority, as, for example, a State Board licensing a corporation . . ., did not object to the adoption of a certain name or mark."

■ Furthermore, in considering the similarity between the two names and the likelihood of confusion, a court must consider the total effect of the trade names rather than dissecting the trade-names looking for dissimilarities. As stated in 3 Callman, Law of Unfair Competition, Trademarks, and Monopolies, § 81.1 at pp. 570–574:

"... The court should consider the mark 'as a whole and not dissected,' for the ordinary buyer does not stop to dissect the marks; if the latter is deceived, it is attributable to the mark as a totality, and not normally to any particular part of it; 'It is not enough to subtract from each mark the parts which are common and then to compare the balance ... What counts is the ensemble.' ... 'Courts often make allowance for the fact that purchasers rely upon memory and somewhat vague or indefinite impressions when selecting a commodity. The passage of time might erase in their minds

certain features of a trade mark such as common suffixes, while they retain other features which are dominant or salient.' If, however, the court considers the two marks side by side there is 'no difficulty in apprehending the difference between them.' Confronted with this dilemma, the court must be alert to realize that it is not its function to educate the purchasers, but rather to take their carelessness for granted, and to be ever-conscious of the fact that the simulation need not be identical; a confusing similarity in overall impression will justify the intervention of equity . . . ."

In addition, appellee's argument that the two names are not deceptively similar because there is also a Plains Oil Company and a Plainsman Service Station located in Laramie, is not material. *Safeway Stores, Inc. v. Rudner*, supra, 246 F.2d at 829.

Neither can we agree with appellee's second contention that appellant has failed to produce evidence showing that the use of the two names in Laramie has created confusion. The record abounds with evidence of actual confusion. And as the *Standard Oil Company* court aptly pointed out, "[t]here can be no more positive proof of likelihood of confusion than evidence of actual confusion." 252 F.2d at 74.

"Proof of actual confusion can be ignored only when it is clear that the confusion was attributable to extraordinary circumstances or that it only occurred, and could only occur, in a single instance." Callman, supra, § 80.6 at p. 563.

The evidence of confusion presented at trial was not that of a single incident; therefore, this court cannot merely ignore this evidence in order to sustain the trial court's decision.

Like the parties in *Standard Oil Company*, supra, Plains Tire and Battery Company and Plains A to Z Tire Company are engaged in substantially identical enterprises. Both businesses "draw their customers from the same sources." *Standard Oil Company*, supra, 252 F.2d at 73. Both businesses

openly compete for business, and as the court stated in *Standard Oil Company*, supra, 252 F.2d at 73, "[i]n such activities they must not compete unfairly or infringe upon the rights of the other."

In the case at bar, Plains Tire and Battery Company introduced uncontroverted evidence of the confusion that has taken place since Plains A to Z Tire Company opened a branch store in Laramie. Bill Stringer, the manager of Plains Tire and Battery Company testified that customer confusion is a daily occurrence. Customers assume that Plains Tire and Battery Company, Inc., has opened a branch store. He attributed this confusion to the fact that the names "Plains" and "Michelin" have been associated together in Laramie for many years.[2]

Stringer related a few of the incidents of customer confusion that he was aware of. For example, Holiday Inn, located in Laramie, Wyoming, made an appointment at Plains Tire and Battery Company to have tires put on its station wagon. As Stringer testified,

" . . . [a]fter the car did not show up for the appointment, I called and they said they apologized, they said the car was already back to them and it already had tires on it, that the tires had been put on by mistake out at A to Z."

Stringer also testified that he was unable to convince one customer, Larry Castle, that Plains Tire and Battery Company had not advertised that it would balance wheels for free if the customer had the company put tires on his vehicle. This promotional deal was being offered by Plains A to Z Tire Company. After Larry Castle had his tires put on by Plains Tire and Battery Company, he was not pleased to discover that his wheels would not be balanced for free. Stringer testified that Castle thought the two companies were one and the same and that he was never able to convince Castle that Plains Tire and Battery Company and Plains A to Z Tire Company were two sepa-

**2.** There is a large sign in front of Plains A to Z Tire Company's building that states on the top line "Plains A–Z Tire Co." and the bottom line "MICHELIN."

rate businesses. Stringer testified that Castle thought

"it was just a poor way of operating the business, that we had told him one thing one time and another thing another time ... that we had failed to live up to our advertising."

Victor Anderson, a civil engineer employed by Banner and Associates, testified that he and a co-employee needed tires for their company cars. Anderson also wanted to have new wheels put on. Anderson decided to patronize Plains Tire and Battery Company and he made an appointment there. The wheels that Anderson wanted had to be ordered from Denver, so when they arrived, Plains Tire and Battery Company called Anderson and informed him that the tires could be put on. Anderson's car was not available at that time, but Anderson did tell Terry Wilson, Anderson's co-employee, that he should take his car into "Plains" to have the new tires put on. When asked why he merely told Wilson to take his company car into "Plains," Anderson said that he was not at that time aware of the fact that there were two tire businesses in Laramie using the name "Plains." He also said that "at the times I've bought tires in the past, I have dealt with Plains Tire and Battery and I honestly, when I said Plains, I thought I was being very clear on what I meant."

Wilson took his car to Plains A to Z Tire Company and had new tires put on. Wilson indicated he did know that there were two tire businesses in Laramie using the name "Plains," but did not think about asking which tire company Anderson was referring to. As Wilson stated:

"A. I didn't really think about it, but the last time I bought tires, I had been to Plains A to Z probably within two or three weeks previous to that with another vehicle.

"Q. So it was the name of that store that meant something to you?

"A. Yes. When he said Plains, I just made an assumption I'd take it back where I had been two or three weeks before."

He also testified that he thought the use of the name "Plains" by both tire businesses resulted in the confusion.

Anderson discovered that Wilson had taken his car to the wrong Plains tire company when he received a call from Plains Tire and Battery Company. The person calling wanted to know where the car was. After Anderson discussed the problem with Wilson, he called Plains Tire and Battery Company and explained that "Mr. Wilson's vehicle already had the tires mounted on them, I indicated to them we would put the tires on my vehicle only and split the business two ways." Anderson also testified that the two names, Plains Tire and Battery Company and Plains A to Z Tire Company are confusing.

Anne Wolf testified that she took her car to Plains A to Z Tire Company, Inc., to have the tires rotated, balanced and aligned. However, she called Plains Tire and Battery Company, Inc., to see if her car was ready. During direct examination Ms. Wolf testified that she "thought they [the two tire companies] were one and two, you know, one and the same company." And when asked whether she felt that the two names were confusing, she stated:

"I think the word Plains is confusing, but if I would have looked further as to the address, I knew the different addresses so if I would have looked at the addresses, I probably wouldn't have made the mistake but the word Plains was confusing to me."

A partner in the firm who represents Plains Tire and Battery Company, John Scott, testified that he needed to purchase tires and after learning that one of the firm's clients sold Michelin tires, he wanted to do business with his client.[3] Scott stated:

---

**3.** Appellee contends that Scott's testimony was impeached because it was established that Scott's law firm represents appellant. However, Scott was not cross-examined. We do not find this fact standing alone sufficient to require the trial court or this court to ignore Scott's testimony. As this court stated in *Beck*

"I drive a Datsun vehicle and I've had very good success with Michelin tires and it was important to me to be able to purchase Michelin tires. I had, as I recall, a brief conversation with someone in our office with respect to one of our clients who was in the tire business. My inquiry led me to find out that, in fact, they did sell Michelin tires and armed with that knowledge, I felt that it would only be proper to purchase tires from one of our clients and I thought I was doing that."

Scott mistakenly purchased tires from Plains A to Z Tire Company, Inc. He testified that before making the purchase he "was vaguely aware that there were similarly related companies." He also stated that the use of the names Plains Tire and Battery Company and Plains A to Z Tire Company in Laramie was confusing to him.

The president and sole stockholder of Plains A to Z Tire Company, Melvin Lenhardt, ran the Laramie store for the first two months after the store opened. He recalled one instance of customer confusion. A man called from Saratoga regarding Uniroyal tires. Lenhardt told this man that "we were not the Uniroyal dealer in town, that we were Plains A to Z Tire Company, we were a new dealer in town and that we handled Michelin and Remington and that Plains Tire and Battery ... was the Uniroyal dealer in town." The man then told Lenhardt that he had heard of Plains A to Z Tire Company in Cheyenne. The next Saturday the man from Saratoga came in and purchased two snow tires. Lenhardt did not recall any other specific incidents of confusion because he is kept very busy at the Cheyenne store and as a result does not spend much time at the Laramie store.

The manager of Plains A to Z Tire Company in Laramie, Neil Stratch, testified that he had experienced confusion similar to that experienced by Stringer, the manager of Plains Tire and Battery Company. He stated he had customers come into the store who had mistakenly thought that an advertisement placed by Plains Tire and Battery Company was a Plains A to Z Tire Company ad. Plains A to Z Tire Company advertises two times a month on consecutive days in the newspaper. When asked if Plains A to Z Tire Company benefits from the other tire company's advertising, Stratch stated: "Yes, but it's a minimum."

Stratch also testified that he has not tried to deemphasize the name "Plains" when advertising.[4] He also stated:

"... [A]s far as the people that work under me, I instruct them to identify themselves as such [Plains A to Z Tire Company, Inc.]. Now, if there's any confusion, if a person comes in, they're instructed that Plains Tire is running a sale, for example, and they come in, we try to specify that it is not our sale, to offer them or at least show them what our pricing structure is and if they are not satisfied then they go up to Plains Tire, but we want to discourage taking advantage of their [Plains Tire and Battery Company, Inc.] ads."

When asked what he could do to "eliminate the possibility of any confusion between the two companies," Stratch replied:

*v. Givens,* 77 Wyo. 176, 309 P.2d 715 (1957), reh.denied 313 P.2d 977, 979 (1957):

"In social or business life, it is sometimes possible to ignore or disregard the words of a speaker without reason. But in the orderly trial of a case, a litigant is entitled to assume that unattached evidence properly presented to a court will receive consideration and that the result of the action will depend upon the evidence which is adduced."

4. Both in Cheyenne and Wheatland, the word "Plains" is being deemphasized by appellee. For example, the ads in the yellow pages of the 1980 Cheyenne and Wheatland telephone books depict the name like this:

The testimony indicates that this logo was designed and put into use a few years ago.

"Well, I—one thing that I believe, it's not our fault in itself by any means and I've never felt that if one of my customers went to Plains Tire that they would be ripped of by any means. I think that the advertising—I'm advertising and Plains Tire is advertising, that creates more traffic and more traffic creates more business. So, I really think that it's been beneficial. I don't think it's been harmful at all."

There was also lengthy testimony concerning other types of confusion. For example, Plains Tire and Battery Company's manager testified that his company has been identified as Plains A to Z on on-the-spot radio advertisements paid for by Plains Tire and Battery Company; he has received telephone calls that were actually meant for Plains A to Z's manager; he has received misbillings, checks made out to the wrong business and late notices for appellee's accounts; there is often confusion as to which company has ordered parts and often the parts are delivered to the wrong business.

The evidence presented at trial of the actual confusion demonstrates that the ordinary customer finds these two trade names confusing. This evidence cannot be ignored.

*Ordinary Purchaser Exercising Due Care*

As to the necessary degree of care, we agree with appellant's contention "that purchasers of tires tend to be more casual customers than persons taking care of financial matters in a bank." As the record indicates, consumers do not purchase tires every month, but on the average every two or three years. As stated in 3 Callman, supra, § 81.2, at p. 577:

" 'The law is not made for the protection of experts, but for the public—that vast multitude, which includes the ignorant, the unthinking, and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions.' *The general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the at-*tention such purchasers usually give in buying that class of goods, is the touchstone.*" (Emphasis added.)

In *Wyoming National Bank,* supra, 572 P.2d at 1126, this court stated that

"[t]he burden cannot be placed upon the business community to lead a member of the public by the hand to the business of his choice. This may be particularly true when consumers are dealing with financial institutions...."

The distinction is then between the casual and discriminating purchaser. And, as noted in *Wyoming National Bank,* bank customers have been held to a higher standard of care than customers of other types of establishments. As 3 Callman, supra, § 81.-2(a) at p. 587 puts it, "[p]articipants in financial transactions are, of course, likely to be careful and discriminating." The record indicates that customers of these two businesses are casual and the confusion cannot be attributed to an extraordinary circumstance. The ordinary customer's general impression is that these two businesses are one and the same. The use of the names Plains Tire and Battery Company and Plains A to Z Tire Company in appellant's trading area has created confusion among the ordinary customers who are exercising due care because these two names convey the same idea. *Standard Oil Company,* supra, 252 F.2d at 74.

#### C. *Intent to Defraud*

Appellee contends that appellant was required to show a fraudulent purpose on the part of appellee. Once again, we cannot agree. In *Wyoming National Bank,* supra, 572 P.2d at 1125–1126, this court concluded that if there is a finding of confusion, fraud will be presumed. As this court stated:

"We are not unmindful of the policy that should confusion and deception result from the use of a particular name, fraud will be presumed regardless of intent and that alone may shape the basis for equitable relief. *Bernstein v. Friedman,* supra, at 230 [62 Wyo. 16, 160 P.2d 227 (1945)]."

In 3 Callman, supra, § 86.1(a), at pp. 1052–1053, the general rule governing the

necessity of bad faith in an infringement action has been set forth as follows:

"It is a well established principle at common law that, in a case involving a technical trademark, it is not a condition precedent to the proof of an infringement that the plaintiff show wrongful intent, or facts supporting the inference of such, on the part of the defendant. A trademark infringement does not stand or fall upon the state of mind of the infringer. It is the objective fact of the infringement that is important. . . ."

3 Callman, supra, at § 82.2(b)(1), pp. 782–788, also provides:

"Absence of malicious intent or bad faith furnishes no defense to a trademark infringement action . . .

\* \* \* \* \* \*

"Yet some court decisions improperly assume there is no infringement if proof of an intent to deceive is lacking. Although it is conceivable that a competitor might, in all innocence, make the unhappy choice of an infringing trademark, he should at least be subject to injunctive action. It would appear the better doctrine that where the objective danger of confusion is evident beyond a reasonable doubt, the court should not concern itself with the defendant's subjective intent. . . ."

In *Weiss v. Stork & Gift Shop*, 137 N.J.Eq. 475, 45 A.2d 688, 692 (1946), a case cited in Callman, supra, the court stated:

"It is not necessary that one using a trade name or slogan which interferes with another's prior right thereto, should have adopted such name with intent to deceive the public or to injure that other to move the court to enjoin; the consequences of the defendant's acts and not the motive for them, determine whether this court should interfere. . . ."

██ In the case at bar, there was no need to prove an actual intent to defraud because appellant has shown actual confusion.

### D. *Better Claim to the Word "Plains"*

Appellee's final contention is that it has a "better claim to the right to use the word 'Plains.' " To support this argument, appellee relies upon the fact that Plains A to Z Tire Company, Inc., registered its corporate name on March 26, 1952, whereas Plains Tire and Battery Company, Inc., did not register its corporate name until October 31, 1977. And "the stipulation of the parties shows that Appellee traces its ancestry back to the original 'Store No. 1' whereas the Appellant's lineage goes back to 'Store No. 2' ".[5]

In *Oliver Gintel, Inc. v. Koslow's, Inc.*, D.C.Tex., 355 F.Supp. 236, 239 (1973), the court held that the fact that a defendant "and/or his affiliates may have had prior rights in a trade name would not necessarily preclude their being guilty of unfair competition."

██ Here, the fact that appellee registered its corporate name some twenty-seven years before appellant does not in and of itself prevent a finding of trade-name infringement. The name Plains Tire and Battery Company has been continually used in appellant's trading area since 1945 and this trade name has acquired a secondary meaning within that trading area. Therefore we cannot agree that appellee has a superior claim to the word "Plains" within appellant's trading area.

██ The conclusion reached by the trial judge is not supported by the evidence and we find that the trial judge erred in denying appellant injunctive relief. Appellant is entitled to have an injunction restraining appellee from using the name Plains A to Z Tire Company, Inc., within appellant's territory.

---

5. Our interpretation of the stipulation is that appellee's predecessor in interest was not Store No. 1. Store No. 1 was eventually sold and the purchasers of this business relocated it in Colorado. As stated in the stipulation:

"Plains Sales, Inc. [Store No. 1], was purchased again in 1951 and eventually moved back to Colorado in 1952."

## II. DAMAGES

Having found that appellant is entitled to injunctive relief, the final question is whether appellant is also entitled to damages. While proof of good faith is not a defense to a trade-name infringement action, such proof is relevant to the question of the award of damages. In *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 2 Cir., 433 F.2d 686, 706–707 (1970), the Second Circuit Court of Appeals said:

"This does not mean that a successful plaintiff is entitled in all cases to a monetary award in addition to injunctive relief. The award for damages is 'subject to the principles of equity.' Relief is properly denied 'where an injunction will satisfy the equities of the case' and where 'there has been no showing of fraud or palming off.' *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 131, 67 S.Ct. 1136 [1139], 91 L.Ed. 1386 (1947)."

Ordinarily, it is necessary to show

"not only that the infringer infringed, but that he did so with the deliberate intent to cause confusion, mistake or to deceive purchasers; in other words, to purposely palm off the infringer's goods as those of the infringed." *Everest & Jennings, Inc. v. E & J Manufacturing Co.*, 9 Cir., 263 F.2d 254, 262 (1958), certiorari denied 360 U.S. 902, 79 S.Ct. 1284, 3 L.Ed. 1254 (1959).

Courts have also held that a plaintiff is not entitled to a monetary award when the defendant apparently acted in a good-faith belief in his right to use the mark. *Consumers Petroleum Company v. Consumers Company of Illinois*, 7 Cir., 169 F.2d 153 (1948), certiorari denied 335 U.S. 902, 69 S.Ct. 406, 93 L.Ed. 437 (1949). Also see 4 Callman, supra, at § 89.2(a), pp. 269–272.

Here, as we have already indicated, Nicholls' attorney sent Lenhardt a letter requesting that Lenhardt not use the word "Plains" in a trade name, if he were to open a branch store in Laramie. When Lenhardt was asked why he did not respond to this letter, Lenhardt testified:

"Yeah, I just didn't feel there was any response needed to it. I felt that the age we live in today and in the society, if you—with free enterprise, if you want to open a business you're welcome to do it, and that's why I did not respond to it."

Lenhardt was then asked the following question by appellant's attorney:

"Q. Now, you apparently, at that time, you felt that there was absolutely no problem with respect to the similarity of names. Is that right?

"A. No, absolutely not."

There is no evidence in the record to support a finding that Lenhardt was acting with an intent to confuse or to deceive prospective purchasers when he opened a branch store in Laramie, and used the name Plains A to Z Tire Company. As the testimony indicates, this name has been used by Lenhardt continually since he purchased Plains A to Z Tire Company in Cheyenne in 1967. The evidence also indicates that Lenhardt believed that the use of the word "Plains" in his Laramie branch store's trade name would not amount to a trade-name infringement. Because there is no evidence of actual fraudulent intent, we agree with the district court that Plains Tire and Battery Company is not entitled to damages.

Reversed and remanded with directions to enter an injunction against Plains A to Z Tire Company enjoining it from using the word "Plains" in its trade name within appellant's trading area.

ROONEY, Justice, dissenting.

My disagreement with the majority opinion is grounded on the belief that there *is* evidence in the record (including reasonable inferences to be drawn therefrom) upon which the trial court could base the findings of fact implicitly made by it in its judgment, and on the belief that the majority opinion is not applying the correct standard of proof.

### THE ISSUES

Appellant's position here is that it has "acquired a secondary meaning in its name through thirty-four (34) years of usage in

the Laramie, Wyoming area,"[1] and that "the trial court's judgment was inconsistent with the substantial and uncontradicted evidence" relative to "confusingly similar" names; relative to the purpose of use by appellee; relative to the "degree of care likely to be exercised by customers"; and relative to whether customers "have been confused or deceived."

The majority opinion sets forth evidence presented by appellee on the question of "confusion" and concludes that the denial of injunctive relief was not supported by the evidence. This, in disregard of the recognition in the majority opinion that the question "is largely one of fact * * * to be determined by the trier of fact" and its statement that:

"* * * We will not substitute our view of the facts for that of the trier of fact, and findings will only be set aside upon appeal if they are 'clearly erroneous or contrary to the great weight of evidence.' * * *" Majority opinion, supra, first paragraph under heading Trade-Name Infringement.

The majority opinion also sets forth and considers only the evidence of appellant while disregarding the presumptions and evidence in favor of appellee. This, in direct opposition to the oft-repeated and well-established standard by which we review the question of sufficiency of the evidence:

"'* * * An appealing party has a heavy burden to overcome. We must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party that conflicts with it and give the evidence of the successful party every favorable inference which may reasonably and fairly be drawn from it.' * * *" Cline v. Sawyer, Wyo., 618 P.2d

144, 145 (1980); Jelly v. Dabney, Wyo., 581 P.2d 622, 624 (1978); Madrid v. Norton, Wyo., 596 P.2d 1108, 1117 (1979).

## THE LAW

The greatest portion of law in this area has developed with reference to trademarks rather than trade names. However, the similarity between trademarks and trade names makes the law of one generally applicable to that of the other.

In two fairly recent cases, we have established some guidelines in trade name cases, i. e., Wyoming National Bank of Casper v. Security Bank & Trust Co., Wyo., 572 P.2d 1120 (1977) and First National Bank of Lander v. First Wyoming Savings & Loan Association, Wyo., 592 P.2d 697 (1979). We there held that unless a trade name is confusing and deceptive on its face, those seeking protection of the same must take the burden of proving that the trade name has acquired a secondary meaning through years of usage and that the public would be confused by the similarity; that this is particularly true of geographic or generic words; that secondary meaning occurs when, by the process of association, the word becomes distinctive and distinguishes not only the producer of a particular service and its quality but also the name of the producer of that service; that the questions are largely factual determinations to be made by the trier of fact[2] which will not be disturbed on appeal unless clearly erroneous or contrary to the great weight of the evidence, and with regard to the likelihood of confusion, the consumer bears some responsibility for using reasonable care.

The proof of secondary meaning or of confusion must be by "substantial" evidence. The Restatement of Torts § 716(b),

---

1. The parties seem to be in agreement that the names themselves are not confusing. The only common words are "Plains" and "Tire." The other words in the respective names preclude ipso facto confusion.

2. Some of the federal circuits consider the likelihood of confusion to be a question of law. See e. g., United States Jaycees v. San Francisco Junior Chamber of Commerce, D.C.N.D.Cal., 354 F.Supp. 61 (1972), affirmed 9 Cir. 1975, 513 F.2d 1226; Miss Universe, Inc. v. Patricelli, 2 Cir. 1969, 408 F.2d 506. The Tenth Circuit

p. 558 (1938)[3] defined a trade name as any designation which:

"(b) through its association with such goods, services or business, has acquired *a special significance* as the name thereof, * * * " (Emphasis supplied.)

The Comment with reference thereto reads:

"*b.* * * * The phrase 'secondary meaning,' as thus used, *does not mean a subordinate or rare significance.* It means rather a subsequent significance added to the previous meaning of the designation and becoming in the market its usual and primary significance.

"Whether or not a designation has acquired this special significance *is a question of fact in each case.* No particular period of use is required. In some cases the special significance is not acquired even after an extended period of use; in others it is acquired after a brief period. The issue in each case is whether or not in fact *a substantial number* of present or prospective purchasers understand the designation, when used in connection with goods, services or a business, not in its primary lexicographical sense, but as referring to a particular person or association. Long continued use of the designation is evidence from which this 'secondary meaning' may properly be inferred; but the inference is rebuttable." (Emphasis supplied.)

And Comment *c* to § 727, Restatement of Torts, reads:

"*c.* * * * the likelihood that prospective purchasers will regard the use of the designation in the manner stated *must be substantial.* That there is a very remote possibility that prospective purchasers generally will so regard the use is not enough. Nor is it enough that there is a strong likelihood that one or two prospective purchasers will be so misled. On the other hand, the rule does not require a probability of general confusion among most of the prospective purchasers.

Compare § 728, Comment *a.*" (Emphasis supplied.)

Referenced § 728, Comment *a* reads:

"*a. Likelihood of confusion.* The ultimate test of whether or not there is a confusing similarity between a designation and a trade-mark or trade name which it is alleged to infringe is the effect in the market in which they are used. In some cases the probable effect can be determined by a mere comparison of the designation with the trade-mark or trade name. In other cases extrinsic evidence may be necessary. In any event, the issue is whether *an appreciable number of prospective purchasers* of the goods or services in connection with which the designation and the trade-mark or trade name are used are likely to regard them as indicating the same source. That a few particularly undiscerning prospective purchasers might be so misled is not enough. On the other hand, it is enough that *an appreciable number of purchasers* are likely to be so misled, even though by exercising greater discernment they could avoid the error. *The issue of confusing similarity is an issue of fact as to the probable or actual reactions of purchasers.* * * * " (Emphasis supplied.)

See *Corning Glass Works v. Jeannette Glass Company,* D.C.S.D.N.Y., 308 F.Supp. 1321, affirmed 2 Cir., 432 F.2d 784 (1970); *Fotomat Corporation v. Cochran,* D.C.Kan., 437 F.Supp. 1231 (1977). Six witnesses to actual confusion were held too "minimal" to support a likelihood of confusion in *DeCosta v. Columbia Broadcasting System, Inc.,* 1 Cir. 1975, 520 F.2d 499, cert. denied 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976). Misdirected letters have been held as nonprobative in this respect. *Holiday Inns, Inc. v. Holiday Out in America,* 5 Cir. 1973, 481 F.2d 445; *B. D. Communications, Inc. v. Dial Media, Inc.,* D.C.S.D.N.Y., 429 F.Supp. 1011 (1977); *Scott Paper Company v.*

---

treats it as a question of fact, *Drexel Enterprises, Inc. v. Richardson,* 312 F.2d 525 (10 Cir. 1962).

**3.** Chapter 35 (Confusion of Source) in the First Restatement of Torts was omitted from the

Restatement Second because the law of Unfair Competition and Trade Regulation had grown away from dependence upon tort law.

*Scott's Liquid Gold, Inc.,* 3 Cir. 1978, 589 F.2d 1225.

"A new competitor is not held to the obligations of an insurer against all possible confusion. He is not obligated to protect the negligent and inattentive purchaser from confusion resulting from indifference. [Citation.] It has been said that he is not required to make the market 'foolproof.' * * * " *Life Savers Corporation v. Curtiss Candy Co.,* 7 Cir. 1950, 182 F.2d 4, 8.

The likelihood of buyer confusion and the existence of secondary meaning are interdependent. If confusion exists, the subject of confusion must have secondary meaning; and if secondary meaning is lacking, buyer confusion cannot exist. *Metro-Goldwyn-Mayer, Inc. v. Lee,* 212 Cal.App.2d 23, 27 Cal.Rptr. 833 (1963); *Nationwide Advertising Service, Inc. v. Nation-Wide Employment Agencies, Inc.,* Cust. & Pat.App., 471 F.2d 638 (1973); *Premier-Pabst Corporation v. Elm City Brewing Co.,* D.C.Conn., 9 F.Supp. 754 (1935).

The testimony of dealers, wholesalers, and employees of the trade name organization are of "little value" in the determination of the existence of secondary meaning. *Hot Shoppes, Inc. v. Hot Shoppe, Incorporated,* D.C.M.D.N.C., 203 F.Supp. 777 (1962); *Application of Duvernoy & Sons, Inc.,* 41 C.C.P.A. (Patents) 856, 212 F.2d 202 (1954); *88¢ Stores, Inc. v. Martinez,* 227 Or. 147, 361 P.2d 809 (1961); *Application of Meyer & Wenthe, Inc.,* 46 C.C.P.A. 919, 267 F.2d 945 (1959).

Secondary meaning is not the same as popularity. *Ralston Purina Company v. Thomas J. Lipton, Inc.,* D.C.S.D.N.Y., 341 F.Supp. 129 (1972); *Norwich Pharmacal Company v. Sterling Drug, Inc.,* 2 Cir. 1959, 271 F.2d 569, cert. denied 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960).

## THE EVIDENCE

Following is a brief summary of record evidence favorable to appellee and support-ive of the factual findings of the trial court.[4]

The businesses of both appellee and appellant originated from the same entity, which was established in 1945–46. In that entity, the Laramie store was "Plains Tire and Battery Co. No. 2," and the Cheyenne store was "Plains Tire and Battery Co. No. 1." In 1952, appellee's name became "Plains A to Z Tire Co., Inc.," upon acquisition of another business named "A to Z Tire Company." A certificate of incorporation was issued by the Secretary of State to appellee as "Plains A to Z Tire Co., Inc." on March 26, 1952. When one was issued to appellant as "Plains Tire and Battery Co., Inc." on October 31, 1977, twenty-five years later, the Secretary of State made a determination that the two names were not the same or "deceptively similar." Appellee began operations in the Laramie area in September 1971, servicing commercial customers primarily. It has operated out of a Laramie location since 1978. Appellant offered to sell its business to appellee for appellee's Laramie operations in 1977, but appellee refused the offer, partly because of the downtown location. Appellee's sales volume for 1979 from the Laramie location was $748,310 (from Laramie, Cheyenne and Wheatland stores, it was $2,682,137) and appellant's was $462,465. Michelin tires are sold by both parties. Appellant also sells Goodyear and Uniroyal, and appellee also sells Remington. Appellee's Michelin sales in Laramie amount to about 15 percent of the gross sales. Appellant had been the only Michelin dealer in Laramie, but now there are five others. Michelin does not grant an exclusive franchise. Larry Clinton Nichols, appellant's president and major stockholder, testified that the association of Michelin's name with that of appellant "made our name and Plains Tire and Battery means something more to the customer." The November 1979 Laramie telephone directory lists two businesses in addition to those of the parties with the word

---

**4.** As recognized in the majority opinion, a judgment carries with it every finding of fact supporting the successful party that "can be rea-sonably and fairly drawn from the evidence," citing *Kvenild v. Taylor,* Wyo., 594 P.2d 972, 976 (1979).

"Plains" in their names, i. e., "Plains Oil Co." and "Plainsman Service." Sy Gerstner, former partner in Plains Tire and Battery Co. (appellant) testified that subsequent to 1956, appellant had "difficulties" with Plainsman Service in that:

> "Well, we had people that called us for an appointment and never showed up and then maybe that evening we'd find out that they were over at Plainsman Service instead of over at our place. We had people that would leave a tire over at Plainsman Service, their son or daughter would maybe leave a tire over at Plainsman Service when it was supposed to be left at our place and they'd come looking for it at our place, so we started calling around and finally found it over at Plainsman Service, when it was actually supposed to come to us."

## MAJORITY OPINION FALLACIES

Appellant had the burden of proving the acquisition of a secondary meaning to its trade name and consumer confusion. The trial court held that the burden was not met. The evidence was ample in support of the trial court's determination.

The large volume of business accomplished by appellee—and by appellant, for that matter—reflects that many consumers had found the respective businesses and there was no evidence that a "substantial" or "appreciable" number of them attached a secondary meaning to the respective names or that they were confused in their trade selection. The six specific instances of actual confusion referred to in the majority opinion are far from a substantial or appreciable number in view of the over $1 million worth of business conducted by the parties in Laramie. It was not established that any of the six were other than "inattentive" purchasers. One of them had no confusion as to the desired party, but only picked the wrong number from the telephone directory in calling to see if the work was accomplished. Another of them knew of the separate businesses, but neglected to ask the person who requested him to take his auto

to "Plains" to which "Plains" he was referring. Two of the six instances were related by an employee of appellant and one other involved a member of the law firm representing appellant. All in all, this evidence could well be found by the trial court to be too "minimal" to support the likelihood of confusion.[5]

The interdependent nature of "likelihood of confusion" and "secondary meaning" has been noted. The trial court's determination that appellant's name had not acquired a secondary meaning is not only supported by the lack of evidence of confusion by a substantial number of consumers, but is evidenced by the fact that some consumers had previously dealt with appellant, thinking they were dealing with Plainsman Service. Perhaps, the name "Plainsman Service" had acquired the secondary meaning.

In fact, the evidence reflects that a secondary meaning, if any, could be to the name of appellee rather than appellant. Appellee established its corporate name twenty-five years before appellant did so. Both businesses originated from a common entity, and appellee had been operating in southwest Wyoming for a long period of time. It had operated in Laramie since 1971, seven years before it opened a store location in Laramie. Appellant tried to sell its business to appellee when appellee decided to open a store in Laramie. Appellee's volume of business in Laramie was half again as much as that of appellant. The evidence was not only sufficient for a finding by the trial court that appellant did not have a secondary meaning in its name, but it was sufficient to find that appellee did so.

Appellant's president and major stockholder testified that the association with Michelin "made our name and Plains Tire and Battery means something more to the customer." "Michelin" is not part of appellant's trade name. It cannot obtain an exclusive right to handle Michelin tires by means of this action. There was extensive testimony relative to the Michelin name as

**5.** As noted, the misdirected mail, invoices, etc., are of no probative value.

associated with that of the parties. The issue has to do with a secondary meaning of the names of *the parties*, not as it could apply to the name "Michelin." Appellant's attention to the Michelin association coupled with the fact that appellee's sales of Michelin tires amounted to only 15 percent of the gross sales could be a factor in the finding by the trial court that appellant's name had not acquired a secondary meaning.

In accordance with the standard of review recognized by the majority opinion, supra, and set forth in the quotation from *Cline v. Sawyer,* supra, I must conclude that the evidence in favor of appellee, leaving out of consideration entirely the conflicting evidence of appellant and giving to the the evidence in favor of appellee every favorable inference to be reasonably and fairly drawn therefrom, dictates affirmance of the trial court's factual findings.

I would affirm.